## UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH DAKOTA
## SOUTHERN DIVISION

| | |
|---|---|
| TIMOTHY A. KINNETZ as trustee of THE TIMOTHY A. KINNETZ REVOCABLE TRUST,<br><br>Plaintiff,<br><br>vs.<br><br>BENAIAH HOLDINGS, INC., BENAIAH CAPITAL, LLC, BENAIAH DIGITAL, LP, BENAIAH DIGITAL FIXED INCOME, LP, BENJAMIN PAUL WIENER, individually; JOSHUA DEWITT, individually, and CHRISTOPHER CHARLES HMIELEWSKI, individually, BENAIAH ENTERPRISES LLC, BENAIAH MANAGEMENT COMPANY, INC, RUNWAY FOUR10 LLC, TRIPLE POINT TRADING LLC, and RONALD J. GASCA, JR., individually,<br><br>Defendants. | Case No. 4:25-CV-04134-CCT |

---

### FIRST AMENDED COMPLAINT

---

**COMES NOW,** Plaintiff, Timothy A. Kinnetz as trustee of the Timothy A. Kinnetz Revocable Trust (hereinafter "Plaintiff," "the Kinnetz Trust" or "the Trust"), by and through his undersigned attorneys, and for his Complaint against the above-named Defendants, states and alleges as follows:

### NATURE OF THE ACTION

1.      This is a civil action arising under 18 U.S.C. § 1962 *et seq.* for racketeering activity and multiple acts in violation of federal and South Dakota law.

2.      This is a matter in which an investor seeks, among other remedies, a receivership of a South Dakota hedge fund, its principal, and its tightly-controlled affiliate entities on the grounds of financial fraud, conversion, fraudulent conveyances, and other fraudulent and tortious conduct which has affected numerous investors, including Plaintiff, across several states.

3.      This matter arises from the June 2025 collapse of "Benaiah Co.," a South Dakota hedge fund operated by Benjamin Paul Wiener (hereinafter, "Wiener") through his use of at least eight interrelated entities under his direct control: Benaiah Holdings, Inc.; Benaiah Capital, LLC; Benaiah Digital, LP; Benaiah Digital Fixed Income, LP; Benaiah Enterprises LLC; Benaiah Management Company, Inc.; RunwayFour10 LLC; and Triple Point Trading LLC (collectively, "the Benaiah Entities").

4.      Defendants' scheme, designed to support the perception of Wiener as a successful financial professional and enrich each of the Defendants in support of their lifestyles, stole $4,000,000.00 from Plaintiff.

5.      Plaintiff's request for a receivership is especially timely and appropriate. It is timely because, after an initial onslaught of lawsuits from investors and lenders, the Benaiah Entities collapsed in the final days of June 2025 following raids by the Federal Bureau of Investigation and the criminal division of the Internal Revenue Service. It is timely because the Benaiah Entities operations exclusively involved the buying and selling of cryptocurrency, digital assets which are easily and rapidly dissipated or converted to U.S. dollars and distributed outside the Benaiah Entities.

## PARTIES

6.      Plaintiff is Timothy A. Kinnetz (hereinafter "Mr. Kinnetz" or "Kinnetz"), a Florida resident and sole trustee of an Iowa trust, the Timothy A. Kinnetz Revocable Trust.

7.      At all times material hereto, Defendant Benaiah Holdings, Inc. (hereinafter "Benaiah Holdings") is a South Dakota corporation (No. DB155071) with a principal place of business at 105 North Krohn Place, Sioux Falls, Minnehaha County, South Dakota 57103 (hereinafter the "Krohn Address"). It can be served through its registered agent, Wiener at 105 North Krohn Place, Sioux Falls, South Dakota 57103.

8.      At all times material hereto, Defendant Benaiah Capital, LLC (hereinafter "Benaiah Capital") was a South Dakota limited liability company (No. DL199685) with a principal place of business at 105 North Krohn Place, Sioux Falls, Minnehaha County, South Dakota 57103. It can be served through its registered agent, Wiener at 105 North Krohn Place, Sioux Falls, South Dakota 57103.

9.      At all times material hereto, Defendant Benaiah Digital, L.P. (hereinafter "Benaiah Digital") was a Delaware limited partnership (No. 5537231) with a principal place of business at 105 North Krohn Place, Sioux Falls, Minnehaha County, South Dakota 57103. It can be served through its registered agent, Harvard Business Services, Inc. at 16192 Coastal Highway, Lewes, Delaware 19958.

10.     At all times material hereto, Defendant Benaiah Digital Fixed Income, L.P. (hereinafter "Benaiah Fixed Income") was a Delaware limited partnership (No. 5889143) with a principal place of business at 105 North Krohn Place, Sioux Falls, Minnehaha County, South Dakota 57103. It can be served through its registered agent, Harvard Business Services, Inc. at 16192 Coastal Highway, Lewes, Delaware 19958.

11.     At all times material hereto, Wiener was a natural person residing in Lincoln County, South Dakota. He can be served at 2701 West Dalston Circle, Sioux Falls, South Dakota 57108 (hereinafter "the Dalston Circle Address").

12.     At all times material hereto, Defendant Joshua Dewitt (hereinafter "Dewitt") was a natural person residing in Lincoln County, South Dakota. He can be served at 1013 E 63rd Street, Sioux Falls, South Dakota 57108.

13.     At all times material hereto, Defendant Christopher Charles Hmielewski (hereinafter "Hmielewski") was a natural person residing in Lincoln County, South Dakota. He can be served at 305 East 77th Street, Sioux Falls, South Dakota 57108.

14.     At all times material hereto, Defendant Benaiah Enterprises LLC (hereinafter "Benaiah Enterprises") was a South Dakota limited liability company (No. 150500) with a principal place of business at the Dalston Circle Address. It can be served through its registered agent, Benjamin Paul Wiener, at 2701 West Dalston Circle, Sioux Falls, South Dakota, SD 57108.

15.     At all times material hereto, Defendant Benaiah Management Company, Inc. (hereinafter "Benaiah Management") was a South Dakota corporation (No. 155177) with a principal place of business at 105 North Krohn Place, Sioux Falls, South Dakota 57103. It can be served through its registered agent, Benjamin Paul Wiener, at the Dalston Circle Address.

16.     At all times material hereto, Defendant Runway Four10 LLC (hereinafter "RunwayFour10") was a South Dakota limited liability company (No. 284378) with a principal place of business at 105 North Krohn Place, Sioux Falls, South Dakota 57103. It can be served through its registered agent, Benjamin Paul Wiener, at the Dalston Circle Address.

17.     At all times material hereto, Defendant Triple Point Trading LLC (hereinafter "TPP") was a Delaware limited liability company (No. 10222523) with a principal place of

business at 105 North Krohn Place, Sioux Falls, South Dakota 57103. It can be served through its registered, McDermott Corporate Services LLC at 1000 North West Street, Suite 1400, Wilmington, Delaware 19801.

18.    At all times material hereto, Defendant Ronald J. Gasca, Jr. (hereinafter "Gasca") was a natural person residing in Lyon County, Minnesota. He can be served at 2126 Jean Road, Balaton, Minnesota 56115.

**JURISDICTION AND VENUE**

19.    This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as Plaintiff's claims include a cause of action pursuant to 18 U.S.C. § 1954(a) and the amount in controversy is in excess of $75,000.00.

20.    This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

21.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because the vast majority of the Defendants reside and/or principally operate in this District. *See* 28 U.S.C. § 1391(c).

22.    Venue is also proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise the following claims occurred in this District, and because Defendants reside, and/or conduct business, in this District.

**FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

**ORIGIN OF THE RELATIONSHIP WITH WIENER
AND PURPOSE OF TRUST'S INVESTMENT**

23.    Mr. Kinnetz is a successful businessman and community leader with roots in the Okoboji, Iowa area.

24. In the fall of 2021, Mr. Kinnetz became interested in digital assets as a way to diversify a large portfolio and as an interesting source of potential capital gains. To explore his options, Mr. Kinnetz sought advice from a trusted group of legal and financial professionals.

25. After a variety of consultations, Mr. Kinnetz decided that the Trust should invest a sum certain into cryptocurrency provided it could find a suitable advisor.

26. The Trust's attorney introduced Mr. Kinnetz to Defendant Wiener.

27. Explaining that he knew nothing about cryptocurrency or digital asset investments generally, Mr. Kinnetz informed Wiener in a series of meetings in fall 2021 that the Trust needed the guidance of someone with deep knowledge of the crypto space.

28. During those meetings, Mr. Kinnetz expressed to Wiener that, while cryptocurrencies can be a high-risk and somewhat speculative investment, he wanted to try to make a reasonable return through buying and holding major cryptocurrencies – such as Bitcoin and Ether – over a long period of time.

29. In fall 2021, while recruiting the Trust's business, Wiener held himself out to Plaintiff as an experienced investment manager with deep expertise in investments and cryptocurrencies.

30. Wiener recommended that the Trust invest $5,000,000.00 into the Benaiah Entities and explained that he would be paid through advisory fees and performance fees.

31. Wiener stated, during the period of its investment with the Benaiah Entities, the Trust would receive monthly investor statements to keep Mr. Kinnetz apprised of the Trust's investments as well as the associated costs, fees, and gains or losses.

32. The Trust's attorney reviewed the investment documents, recommended proceeding with the investment, and the Trust signed the required paperwork in December 2021

to formalize a $4,000,000.00 investment in two of Wiener's entities: Benaiah Capital and Benaiah Digital.

## MR. WIENER AND HIS BUSINESSES

33.     According to its website, the Benaiah Entities collectively hold themselves out as a "boutique investment firm focused exclusively on the digital assets, blockchain technology, and the advances in Web3." **Exhibit A.**

34.     Upon information and belief, the purpose of Benaiah Capital's purpose was to engage in investment management and advisory services for pooled investment vehicles, including Benaiah Digital, and Benaiah Fixed Income.

35.     Plaintiff has been unable to confirm or locate any licenses or registrations for Wiener or any of the Benaiah Entities under state or federal regulations governing money transmitters, securities brokers or broker-dealers, or financial advisors. **Exhibit B.**

36.     Benaiah's website provides that NAV Consulting, Inc. (hereinafter "NAV") is its fund administrator, which specializes in the cryptocurrency space and provides back-office support functions, such as investor statements and trade reconciliation. **Exhibit C.**

37.     On 11 February 2025, NAV notified the Trust that NAV was no longer working with Benaiah Digital. **Exhibit D.**

38.     Benaiah Digital currently has no administrator.

### <u>Leadership</u>

39.     Benaiah's website promotes its leadership team as "cross-disciplinary experts who value, and are committed to, serving our clients. Our team has demonstrated success and professional expertise in the areas of cryptocurrency, wealth and portfolio management, custody,

security and risk management, finance, tax, audit, insurance, client relations, marketing, and administration." **Exhibit E.**

40.    Benaiah's leadership included Dewitt, Wiener, Hmielewski, and Scott Pugh.

41.    Dewitt served in the role as a board member and the Chief Investment Officer for Benaiah Holdings or its various affiliates from 2018 to 2025 and, upon information and belief, was a part owner of Benaiah Capital during the time the Defendants engaged in the conduct giving rise to this action.

42.    Dewitt is the CEO of a cryptocurrency startup named CoinLion that is also based in Sioux Falls, South Dakota. Upon information and belief, Dewitt was actively working for CoinLion during his tenure with the Benaiah Entities.

43.    Wiener served as the president and CEO of Benaiah and Chairman of the Board for Benaiah Holdings and, upon information and belief, an employee, board member, owner, and control person for each of the Benaiah holdings.

44.    Upon information and belief, Wiener previously worked in the insurance industry but did not have meaningful experience in cryptocurrency, investment advising, or hedge-fund management at the time he founded the Benaiah Entities.

45.    Defendant Hmielewski served as a board member and Chief of Staff/Investor Relations for Benaiah Holdings or its various subsidiaries.

46.    Upon information and belief, similar to Wiener, Hmielewski did not have meaningful experience in cryptocurrency, investment advising, or hedge-fund management at the time he was hired at the Benaiah Entities.

47.    Scott Pugh worked as controller and accountant for Benaiah Holdings or its various subsidiaries from April 2019 until July 2023.

**Benaiah Holdings**

48.    Benaiah Holdings, formerly known as Benaiah Holdings Company, is a corporation formed under South Dakota law with a principal place of business at the Krohn Address.

49.    Benaiah Holdings, was formed on 12 October 2018, and consists of 10,000,000 common shares and 3,000,000 preferred shares.

50.    Benaiah Holdings, used the Krohn Address and described the entity as operating in the "insurance" industry with no revenue in an SEC Form D filed 15 April 2014.

**Benaiah Capital**

51.    Benaiah Capital is a limited liability company formed under South Dakota law with its principal place of business at the Krohn Address.

52.    The South Dakota Secretary of State filings indicate that Benaiah Capital was formed on 29 March 2021 and created by Benaiah Holdings, a South Dakota corporation located at the Krohn Address.

53.    Benaiah Capital is a manager-managed company which lists its managers as Benaiah Holdings and BitHome, Inc. and lists the Krohn Address for both entities.

54.    Bithome, Inc. was formed and managed by Dewitt.

55.    Upon information and belief, Benaiah Capital was dissolved in 2022 and reinstated in 2023.

56.    Upon information and belief, Benaiah Capital did not file its 2025 report with the South Dakota Secretary of State and is currently in "delinquent" status.

**Benaiah Digital**

57.    Benaiah Digital is a limited partnership formed under Delaware law with a principal place of business at the Krohn Address in South Dakota.

58.     Benaiah Digital was formed on 16 March 2021.

59.     The entity remains in good standing with the Delaware Secretary of State.

60.     Benaiah Digital is not registered with the South Dakota Secretary of State.

61.     Per Benaiah Digital's Subscription Booklet, Benaiah Capital is the general partner of Benaiah Digital.

62.     In a Form D filed with the Securities and Exchange Commission on 19 April 2021, Benaiah Digital lists the Krohn Address and describes itself as a "hedge fund" managed by Wiener and offering "pooled investment fund interests." The form does not disclose revenue but lists "minimum investment" as $100,000.00. **Exhibit F.**

**Benaiah Fixed Income**

63.     Benaiah Capital holds itself out as managing another fund via another Delaware entity, Benaiah Fixed Income.

64.     Benaiah Fixed Income used the Krohn Address and described itself as a "hedge fund" managed by Wiener and offering "pooled investment fund interests" in a 18 May 2021 Form D filed with the SEC.

65.     The 18 May 2021 Form D filed with the SEC listed "minimum investment" as $50,000.00, but did not disclose the fund's revenues.

**Other Entities**

66.     Wiener is also associated with a handful of related and similarly named South Dakota companies, including:

- Aslan Management, LLC (No. 226909) and registered owner of trade name Benaiah Custody Solutions, a South Dakota company whose primary place of business is the Krohn Address. Aslan owns trade name "Benaiah Custody Solutions" (No. 233878).

- Benaiah Enterprises LLC (No. 150500), an active entity whose member and agent is Wiener at the Dalston Circle Address.

- Benaiah Insurance Company, Inc. (No. 155070) d/b/a Benaiah Company, a dissolved South Dakota corporation whose agent and principal was Wiener at the Dalston Circle Address.

- Benaiah Management Company, Inc. (No. 152824), a terminated South Dakota entity formerly at 101 North Krohn whose registered agent was Wiener. Benaiah Capital's website holds itself out as being operated by Benaiah Management Company, Inc. and claims that Benaiah Co. is a service mark owned by the same company.

- Benaiah Runway, Inc. (No. 148803), a dissolved South Dakota corporation whose agent and principal was Wiener at the Dalston Circle Address.

- ELAH Tech, LLC (No. 184122), a dissolved South Dakota limited liability company whose agent and principal was Wiener at the Krohn address. ELAH is a wholly-owned subsidiary of Benaiah Holdings, and paid certain expenses on behalf of Benaiah Capital and related entities.

- Runway Four10, LLC (No. 284378), a South Dakota limited liability company whose agent and principal is Wiener at the Dalston Circle Address. The company is in good standing. Upon information and belief, Runway Four10, LLC recently began operating – under Wiener's control and direction – as an investment firm following the collapse of Benaiah Co. Since the collapse of Benaiah Co. in spring 2025, Defendant Wiener recruited investors into Runway Four10 in an effort to find funds to pay back Plaintiff and other investors.

67.     Beginning in approximately March 2025 and continuing through the present date, Defendant Wiener has collected funds from Runway Four10 investors and transferred them to the control of Defendant Triple Point Trading. He has also wired large amounts of investor funds from Runway Four10 to Benaiah Capital.

68.     Triple Point Trading is the brand name of Defendant Wiener's latest platform designed to induce investors into trusting him with their funds and allowing him to trade on their behalf on Weex, an offshore cryptocurrency exchange based in southeast Asia and unavailable to American retail investors and financial institutions.

69.     Defendant Triple Point Trading, operating under the direction of Defendant Wiener and management of Defendant Gasca, uses the Weex exchange by means of Virtual Private Networks (VPNs). VPNs are a common, accessible, and inexpensive form of computer network that allow users to disguise their physical location and, consequently, access services that might not otherwise be available in the user's jurisdiction.

## THE TRUST'S EXPRESS INVESTMENT GOALS

70.     On 14 December 2021, at the direction and behest of the Trust, Northwest Wealth Management transferred via wire $1,000,000.00 from the Trust's TD Ameritrade account to Benaiah Digital's account at Peoples Bank in Rock Valley, Iowa.

71.     Six days later, on 20 December 2021, the Trust transferred via wire $3,000,000.00 from the Trust's Bank Midwest account to an account at MVB Bank belonging to Payward Ventures, Inc., a major cryptocurrency exchange called "Kraken" through which Wiener established a cryptocurrency trading account on behalf of the Trust.

72.     Mr. Kinnetz transferred these funds pursuant to his understanding with Wiener, based on numerous email and Zoom conversations between Mr. Kinnetz and Wiener (many of which involved the Mr. Kinnetz's wealth advisor, CPA, and attorney).

73.     Specifically, Mr. Kinnetz and Wiener agreed that $1,000,000.00 of Trust money would be invested through Benaiah Digital's investment fund.

74.     Mr. Kinnetz understood that Wiener would invest these funds as he saw fit, based on Wiener's best judgment in whatever he believed would provide a return on investment, including higher risk digital assets such as "altcoins," or new and less-capitalized emerging projects associated with unique tokens or other digital assets. While this sounds somewhat speculative, Mr. Kinnetz trusted Wiener's purported reputation for superior investment and cryptocurrency experience.

75.     Mr. Kinnetz and Wiener also agreed that Benaiah Capital would manage $3,000,000.00 of Trust money in its Kraken account, which would be under the sole control and view of Wiener and his employees.

76.     Under this plan, Benaiah Capital would manage these funds for the purpose of buying and holding the cryptocurrency-equivalent of "blue chip" stocks; in other words, less-speculative, established digital assets with established use cases and relatively high rates of institutional and consumer adoption.

77.     At no time did Mr. Kinnetz authorize taking on additional risk, including lending, staking, or purchase of options contracts or trading on margin.

78.     The investment relationships described above were governed in part by Benaiah Digital's Subscription Booklet (hereinafter, the "Subscription Agreement") and Benaiah Capital's Investment Management Agreement (hereinafter, the "IMA").

79.    The Subscription Agreement provides that, upon acceptance of the Trust's investment of $1,000,000.00, the Trust becomes a limited partner of Benaiah Digital with a discrete percentage interest. **Exhibit G** at 3(a).

80.    The IMA requires Benaiah Capital to manage the investment and reinvestment of the Trust's assets in accordance with the Trust's objectives as communicated by Mr. Kinnetz. **Exhibit H** at § 1, ¶ 1.

81.    The IMA does not expressly contemplate how Benaiah Capital is to proceed if the client's express goals and directives contradict Section 1, Par 2, which specify that it "may" make investments in a variety of methods, including margin and altcoin trading. **Exhibit H** at p. 15, Appendix B to IMA.

82.    The IMA requires Benaiah Capital to "generally be available" to the Trust, monitor the Trust's accounts on an ongoing basis, provide quarterly reviews, and discuss goals and needs at least annually. **Exhibit H** at § 1, ¶¶ 4-5.

83.    The IMA further requires reports to include purchase dates, cost, and current market value of assets in the client's account. **Exhibit H** at § 8.

### THE TRUST'S EXPRESS INVESTMENT GOALS

84.    In early 2022, the balance of the Trust's Kraken account, managed by Benaiah Capital, totaled $3,138,792.50.

85.    For approximately the first year of the Trust's investments with Benaiah, Wiener kept in close touch with Kinnetz and his team. Among his efforts were regular attendance, via Zoom, at Kinnetz's meetings of advisors, wherein Wiener would provide detailed summaries of the status of the Trust's investments through its Kraken and Benaiah Digital accounts.

86.    The Trust generally received regular investment reports and statements through the first year.

87.    In early winter 2022, the global crypto market experienced a major crash, causing the assets held by the Trust to plummet in value.

88.    Relying on the advice of its tax professionals and wealth managers, the Trust directed Benaiah Capital to realize $2,005,106.00 in capital losses for Tax Year 2022. This "tax loss harvesting" strategy was made with the assurance from Benaiah and Wiener that it would "reinvest" in crypto assets after the realized loss, with the goal of positioning the account for future capital gains. Kinnetz directed Wiener to reinvest these funds, and Wiener agreed to do so.

89.    Wiener, through Benaiah Capital, made a verbal representation to Kinnetz that such "reinvestment" was made on its behalf on 17 February 2023.

90.    On 18 November 2023, Wiener notified the Trust through an "Investor Letter" that the Benaiah Entities would be delayed in providing statements to investors.

91.    In early November 2023, the Trust requested that Benaiah provide it a way to independently examine the contents of its Kraken account.

92.    On 11 November 2023, in response to the Trust's request, Wiener set up a software system at Koinly in Kinnetz's name (hereinafter, the "Koinly Account") and represented to Mr. Kinnetz that the Koinly system was "tied" to the Kraken account in a way that allowed Mr. Kinnetz and his team to see the real-time balance of the digital assets in the account. **Exhibit I.**

93.    On 11 November 2024, Mr. Kinnetz believed his Kraken account held assets valued at $1,541,201 based on documentation provided by Wiener to the Trust.

94.    In March 2025, Mr. Kinnetz learned that this representation was false.

95.    The Koinly Account is not tied to any particular wallet or blockchain address updating in real time, but is instead reflective of data manually imported by Wiener from a Kraken-generated spreadsheet on or about the date of the Koinly Account's creation.

96.    On 30 November 2024, the Trust received a statement from Benaiah Digital listing the Trust's balance as $956,124.53 (hereinafter, the "November Statement").

97.    The November Statement was the last statement that the Trust received.

98.    On 11 February 2025, the Trust received a notice – without any accompanying explanation from Benaiah– that NAV was terminating its role as the administrator of the Benaiah Digital's fund. **Exhibit D.**

99.    Since 30 November 2024, the Trust has not received any reports or statements regarding its investments.

100.    Benaiah and Wiener blame the difficulty on producing such reports and statements on onboarding a new fund administrator. **Exhibit J.**

101.    The cessation of NAV's involvement meant that the Trust could no longer directly access its accounts with Benaiah, which it had previously done through the NAV portal.

102.    On 15 March 2025, the Trust contacted Kraken to gain direct access to the Kraken account established by Benaiah.

103.    After obtaining access, Mr. Kinnetz learned that the balance in the Trust's Kraken account was $599.30, a $2,999,400.70 all-time loss and far less than indicated at any point by Benaiah, including the nearly $1,000,000.00 when it last received a statement from Benaiah.

104.    This loss was not reflected in the Koinly Account made in November 2024.

105.    The Kraken records appear to demonstrate that the account balance decreased from $656,372.78 to nearly zero dollars on 17 March 2023.

106.    At no point did Wiener or any Benaiah Entity disclose these transactions or their adverse impact on the Trust's balances.

107.    On 15 March 2025, the Trust's attorney recused himself from Trust business after he disclosed to Mr. Kinnetz that he had been serving as counsel for Wiener and the Benaiah Entities at the same time as he served as General Counsel for the Kinnetz Family Office and an attorney for the Kinnetz family and their entities.

## RECENT DEVELOPMENTS

108.    In March and April 2025, the Trust made several demands to Wiener and his entities, seeking a full accounting and return of the Trust's investments, including the immediate transfer of all digital assets.

109.    On 22 April 2025, the Trust sent an Account Closure Letter requesting that Benaiah close the Trust's accounts, return its funds, and provide an accounting.

110.    On April 25, 26 and 27, 2025, the Trust sent follow-up emails to Wiener relating to the 22 April 2025 Account Closure Letter.

111.    On 29 April 2025, the Trust sent an email demanding (i) an accounting of accounts and funds with Benaiah Capital and Benaiah Digital; (ii) access to, and confirmation of, Kraken account activity on behalf of the Trust; (iii) written confirmation of account closure and return of funds; and (iv) notice of terminating the IMA.

112.    In response to the Trust's demands listed above, Wiener and his entities have consistently stated that they will honor the requests but cannot or will not do so in the time required.

113.    Wiener has repeatedly cited finding a new fund administrator as a cause for the delay.

114.    Wiener has also cited the formal redemption process and an alleged termination and withdrawal period as a reason for delay well beyond the period set forth in the Agreement. For example, Wiener noted that, while the Trust's request triggered a 10% withholding (a penalty fee paid to Benaiah), and a 90-day withdrawal period, redemptions typically do not occur for 30 days after the end of that period.

115.    Wiener also noted that even after that 30-day period expires, the Trust is not likely to get its funds until significantly later (identifying mid-October, specifically). **Exhibit K.**

116.    The Trust made several requests for a Benaiah Digital redemption form before Wiener finally sent it to Mr. Kinnetz.

117.    Once Mr. Kinnetz received the document, he noticed that the form was addressed to NAV – the prior administrator of the fund. When Kinnetz raised the issue with Wiener, Wiener indicated the prior administrator's name on the form had no impact on the redemption request whatsoever and that no corrections needed to be made. **Exhibit L.**

118.    Kinnetz signed and returned the redemption form. **Exhibit M.**

119.    Wiener has posted YouTube videos (available at https://www.youtube.com/watch?v=E1oyVKjeu3I) which seek to persuade investors to delay redemptions.

120.    On or about 26 June 2025, the FBI and IRS conducted raids of the Krohn Address and Wiener's personal residence, relating to Wiener's management of investor money described herein.

121.    In July 2025, Wiener revealed to Plaintiff that the Benaiah Entities recently loaned over $10,000,000.00 to a third-party, Reliz Technologies LLC (Illinois Business No. 07463553) d/b/a BlockFills, which has since defaulted on repayment. Wiener sourced these funds from an

outside investor ($7 million) as well as $3 million from investor monies at Benaiah Digital and Benaiah Capital.

122.    The conduct of the Defendants in this action has spurred multiple lawsuits by creditors seeking records and redemptions, damages or payments of secured debts well in excess of $10,000,000.00. **Exhibit N.** These actions include:

a.  *Dynamic Alpha v. Wiener*, 41CIV25-000477 (Lincoln County, SD);

b.  *Syverson et al. v. Wiener et al.*, 49CIV25-001678 (Minnehaha County, SD);

c.  *Taunton Ventures, LLC v. Benaiah Capital, LLC et al.*, 49CIV25-001899 (Minnehaha County, SD); and

d.  Plaintiff has confirmed that at least two other creditors are negotiating with Defendants prior to filing suit.

123.    On 16 July 2025, in a videoconference call with Plaintiff and a second creditor, Wiener told Plaintiff that he intends to immediately liquidate all assets held by Benaiah Digital.

124.    On 15 August 2025, this Court appointed Lighthouse Management Group receiver ("the Receiver") over Defendants Benaiah Capital and Benaiah Digital.

125.    The Receiver recently filed his first report with this Court and noted that a second report is forthcoming.

## <u>COUNT I</u>
### RACKETEERING IN VIOLATION OF 18 U.S.C. § 1962(C)
### (Defendants Benaiah Holdings, Inc; Benaiah Capital, LLC; Benaiah Digital, LP; Benjamin Paul Wiener; Benaiah Enterprises LLC; Benaiah Management Company, Inc.; Runway Four10 LLC; Triple Point Trading, LLC; and Ronald J. Gasca, Jr.)

126.    Plaintiff hereby incorporates by reference the allegations contained in the above paragraphs as if fully set forth herein.

127.    Defendants Benaiah Holdings; Benaiah Capital; Benaiah Digital Benjamin Paul Wiener; Benaiah Enterprises LLC; Benaiah Management Company, Inc.; Runway Four10 LLC; Triple Point Trading, LLC; and Ronald J. Gasca, Jr. ("collectively, the RICO Defendants") are a group of individuals and corporate entities that were and are engaged in interstate commerce and are associated in fact for the common and shared purpose of (1) profiting by managing investor funds and trading cryptocurrency, while also engaged in criminal acts; (2) operating a fraudulent hedge fund under the umbrella of "Benaiah Co." to steal digital assets and cash from Plaintiff after convincing him to send cash to them directly and to an exchange account under their control; (3) funneling Plaintiff's cash and cryptocurrency through more than two dozen blockchain wallets and bank accounts designed to mask the origin and destination of those stolen funds or assets; (4) using those stolen funds or assets to engage in transactions contrary to the written and verbal representations made by Defendants Benaiah Capital, LLC, Benaiah Digital, LP, and Wiener; and (5) using funds and assets converted from other illegal enterprises to deceive Plaintiff into believing the RICO Defendants could and would make Plaintiff whole.

128.    The RICO Defendants operated the enterprise together.

129.    The RICO Defendants each participated in the operation and management of the enterprise with the goal of accomplishing the same common and shared purpose.

130.    As alleged in detail throughout this Complaint, the RICO Defendants intentionally and knowingly engaged in a pattern of racketeering activity from 2021 to present, including transmissions by means of wire, radio, or television communication with intent to defraud Plaintiff. These predicate acts – which span 2021 to 2025 – include, but are not limited to:

(a)    Intentionally using the U.S. Postal Service to regularly mail to Plaintiff knowingly false or materially misleading financial statements in furtherance of the RICO Defendants' fraudulent scheme to convert Plaintiff's funds;

(b)    Intentionally using interstate wires, including cellular telephone service, text messaging, email, and other internet communications to knowingly provide Plaintiff false or materially misleading information in furtherance of the RICO Defendants' fraudulent scheme to convert Plaintiff's funds;

(c)    Intentionally using interstate wires, including bank wire transfers, to knowingly receive Plaintiff's fraudulently induced transfers of funds, disguise the destinations of those funds, convert those funds for themselves, and receive funds from other investors in order to defraud Plaintiff into believing that Defendant Wiener was still in possession of Plaintiff's funds and in furtherance of the RICO Defendants' fraudulent scheme to convert Plaintiff's funds.

(d)    Intentionally using interstate wires, including internet communications and bank wire transfers, to knowingly receive funds from Plaintiff with the intent of defrauding it into believing that it had invested in cryptocurrency; knowingly creating a software account and manipulating that account in a manner designed to defraud Plaintiff into believing it showed the real-time location and value of his cryptocurrency; then knowingly and secretively converting Plaintiff's cryptocurrency or liquidating it before converting the liquidated sum, all in furtherance of the RICO Defendants' fraudulent scheme to convert Plaintiff's funds.

131.    As alleged in detail throughout this Complaint, the RICO Defendants knowingly and intentionally engaged in a pattern of racketeering activity that included engaging in monetary transactions in property derived from criminally obtained property and unlawful activity.

132.    As alleged in detail throughout this Complaint, the RICO Defendants knowingly and intentionally engaged in a pattern of racketeering activity that included conducting financial transactions with intent to promote the carrying-on of specified unlawful activity and/or to conceal or disguise the nature, location, source, ownership, and proceeds of specified unlawful activity.

133.    As alleged in detail throughout this Complaint, the RICO Defendants knowingly and intentionally engaged in a pattern of racketeering activity that included engaging in monetary transactions in property derived from specified unlawful activity and investing or lending racketeering income by using the stolen assets for investments or lending them to a third party in pursuit of a profitable return.

134.    The predicate acts of the RICO Defendants are not isolated events; they are part of a widespread scheme to defraud other unsuspecting investors for the same or similar purposes and to achieve the same or similar results through the same or similar methods.

135.    The RICO Defendants each had their own roles in the enterprise and maintained those roles through the course of the scheme, and each personally conducted the affairs of the enterprise. For example:

- Wiener recruited investor money with false promises and kept investors from successfully redeeming their balances, and effectuated transfers of cash and cryptocurrency from Benaiah Capital and Benaiah Digital to himself and the other RICO Defendants, including Benaiah Holdings, Benaiah Enterprises, and Benaiah Management Company.

- Weiner, Benaiah Capital, and/or Benaiah Digital then transferred approximately $672,000 to Benaiah Holdings, $780,000 to Benaiah Management, and $25,000 to Benaiah Enterprises.

- Wiener used Runway Four10 to recruit new investors, then wired $125,000 of those investor funds from Runway Four10 to Benaiah Capital to mislead Benaiah Capital and Benaiah Digital investors into believing Benaiah Capital and Benaiah Digital were solvent.

- Using the brand of Defendant Triple Point Trading and cooperation of Defendant Gasca, Wiener used Runway Four10 to send new investor funds offshore to the Weex exchange to mislead Benaiah Capital and Benaiah Digital investors into believing that Benaiah Capital and Benaiah Digital were solvent;

136.    As a natural and foreseeable consequence of the enterprise, Plaintiff lost more than $4,000,000.

### COUNT II
### COMMON LAW FRAUD (SOUTH DAKOTA)
**(Defendants Benaiah Holdings, Inc., Benaiah Capital, LLC,**
**Benaiah Digital, LP, and Benjamin Paul Wiener)**

137.    Plaintiff hereby incorporates by reference the allegations contained in the above paragraphs as if fully set forth herein.

138.    On or about 13 December 2021, through a series of phone calls and email communications, Defendant Wiener – acting personally and on behalf of himself and the Benaiah Entities – induced Plaintiff into entering into two contracts: the IMA with Benaiah Capital and the Subscription Agreement with Benaiah Digital.

139.    In order to secure Plaintiff's participation in these agreements and facilitate Plaintiff's transfer of $4,000,000.00 to the Benaiah Entities, Wiener made false misrepresentations of material fact in a manner designed to deceive Plaintiff. Among these representations were that:

a.    Wiener was qualified, by education or experience, in financial advising and investments, including the operation of hedge fund and related entities;

     b.  Wiener was qualified, by education or experience, in cryptocurrency, cryptocurrency trading, cryptocurrency investment and/or blockchain technology;

     c.  Wiener and the Benaiah Entities possessed the fundamental competencies necessary to manage an investment fund; and

     d.  Wiener and the Benaiah Entities were in compliance with state and federal regulations governing investment funds and financial advisors.

140.    In reality, Wiener was a former insurance salesman who had no experience or competencies in cryptocurrency, blockchain, digital asset trading, investment management or financial advising, nor were he or the Benaiah Entities ever registered with, or licensed by, any regulatory authority, including the Financial Industry Regulatory Authority (FINRA).

141.    On or about 17 February 2023, through a series of phone calls and email communications, Defendant Wiener – acting personally and on behalf of the Benaiah Entities – made additional false representations of material fact in a manner to deceive Plaintiff with respect to Plaintiff's request to re-purchase cryptocurrencies that Wiener had sold at Plaintiff's direction in order to facilitate tax loss harvesting for the 2022 tax year. Specifically, Wiener told Plaintiff that he had "reinvested" the funds. Upon information and belief, he made no such reinvestment, a fact which Plaintiffs discovered in March 2025 when they obtained access to Plaintiff's account at the Kraken exchange.

142.    On or about 11 November 2024, through a series of phone calls and email communications, Defendant Wiener – acting personally and on behalf of the Benaiah Entities – made additional false representations of material fact in a manner to deceive Plaintiff with respect to Plaintiff's request for transparency into the activity in Plaintiff's cryptocurrency trading account at the Kraken cryptocurrency exchange. Specifically, Wiener created the Koinly Account with

Koinly – a third-party software to which financial accounts can be automatically connected in order to observe real time activity in those accounts – and told Plaintiff that the Koinly Account accurately reflected the balance of Plaintiff's Kraken account in real time. In reality, Wiener designed the Koinly Account's parameters to prevent real time observation of Plaintiff's Kraken account by importing a limited set of prior transactions ending 17 February 2023. Wiener maintained this artifice as he continued to execute trades using Kinnetz's Kraken account and eventually convert the cryptocurrency assets and/or proceeds thereof.

143.    On or about 30 November 2024, Wiener – acting personally and on behalf of the Benaiah Entities – made further false representations of material fact, and omitted material facts, in a manner to deceive Plaintiff with respect to the contents of Plaintiff's Kraken account and his plans for liquidating Plaintiff's cryptocurrency assets. Specifically, in a financial statement issued to Plaintiff on that same date, he failed to correct his prior misstatements about the transparency and useability of the Koinly Account and did not disclose his plan to liquidate the account in the coming months.

144.    These representations were material because they purported to provide the necessary information for Plaintiff – someone with no direct access to the hedge fund's books – to make informed financial decisions, including whether to send money to the Defendants and keep its investment under the Benaiah Entities' control.

145.    Defendants made these statements in order to induce reliance by Plaintiff, who acted reasonably and was justified in relying on Defendants in light of his inexperience as a layman with no cryptocurrency or related investment experience, and the trust created with Defendants when Plaintiff's own counsel introduced Plaintiff to Wiener and vouched for his trustworthiness and competence.

146.    Plaintiff did, in fact, rely on these statements, transferring substantial sums and not demanding further account scrutiny until the hedge fund became visibly distressed in March 2025.

147.    As the sole persons with control and information into account activity at the hedge fund, at the time they were made, Wiener and the Benaiah Entities made these representations knowing or believing that they were false or, alternatively, made them recklessly and without regard for whether they were true or false. Defendants also made these false statements and omissions with no reasonable grounds to believe they were true.

148.    Defendants suppressed material facts when they were bound to disclose them and misled with other facts or withhold material information.

149.    Defendants engaged in this conduct in order to deceive Plaintiff for the purpose of financial gain, both personal and for the purpose of propping up the Benaiah Entities.

150.    As a direct and proximate result of Defendants' misconduct, Plaintiff has suffered economic damages, including loss of its entire investment principal.

### COUNT III
### FRAUDULENT CONVEYANCES IN VIOLATION OF SOUTH DAKOTA'S UNIFORM FRAUDULENT TRANSFER ACT (CODIFIED LAW § 54-8A)
### (Defendants Benaiah Holdings, Inc., Benaiah Capital, LLC, Benaiah Digital, LP, Benjamin Paul Wiener and Christopher Charles Hmielewski)

151.    Plaintiff hereby incorporates by reference the allegations contained in the above paragraphs as if fully set forth herein.

152.    Upon information and belief, on or about 17 February 2023, Defendants converted Plaintiff's "reinvestment" instead of returning it to Plaintiff's Kraken account.

153.    On or about 17 March 2025, Defendants liquidated the cryptocurrency in Plaintiff's Kraken account, reducing its value to a mere $599.30.

154.    When Plaintiff discovered these facts in March 2025, Plaintiff learned for the first time that Defendant's prior representations (as outlined in the prior count) were false. As such, when Defendants liquidated Plaintiff's Kraken account, Plaintiff had already accrued a cause of action against Defendants and, as a potential judgment creditor, was entitled to the preservation of funds which might be properly subject to a future judgment. Defendants, accordingly, had an obligation not to dissipate those funds or conceal their ultimate destinations.

155.    Upon information and belief, after liquidating the account, Defendants Wiener and Hmielewski used the Benaiah Entities and, at least some of the entities listed in ¶ 60 of this complaint, as wholly-owned and wholly-controlled vehicles for multiple inter-company transactions, deliberately designed to make it difficult to trace investor funds and track fees. Specifically, Defendants Wiener and Hmielewski rapidly shuffled the proceeds of Plaintiff's liquidated account to an account in the name of Defendant Benaiah Capital or Benaiah Digital, and then to accounts at Benaiah Holdings, Inc, which they then used to pay staff, pay themselves, pay other investors, and prop up the Benaiah Entities.

156.    As a direct and proximate cause of Defendants' conduct, Plaintiff has sustained economic damages.

## COUNT IV
## CONVERSION
**(Defendants Benaiah Holdings, Inc., Benaiah Capital, LLC,
Benaiah Digital, LP, and Benjamin Paul Wiener)**

157.    Plaintiff hereby incorporates by reference the allegations contained in the above paragraphs as if fully set forth herein.

158.    On or about 17 February 2023, upon information and belief, Defendants took possession of Plaintiff's reinvestment funds instead of returning them to Plaintiff's Kraken account.

159.    On or about 14 June 2024, Defendant Wiener wired $1,700,000.00 from Defendant Benaiah Capital's account – an account which contained Plaintiff's funds – to Defendant Wiener's personal bank account at People's Bank.

160.    On or about 17 March 2025, Defendants liquidated Plaintiff's Kraken cryptocurrency account and kept the proceeds for themselves.

161.    Defendants have no rightful ownership or possessory interest in Plaintiff's cash, cryptocurrency assets or proceeds therefrom.

162.    Defendants wrongfully maintain possession of, and exert dominion over, Plaintiff's property.

163.    Defendants' possession of Plaintiff's property wrongfully deprives Plaintiff of the benefits of its property.

164.    Defendants' possession of Plaintiff's property is inconsistent with, and in derogation of, Plaintiff's ownership and possessory rights.

165.    Defendants' possession of Plaintiff's property is in willful and wanton disregard for the rights of Plaintiff. Defendants lack any good faith claim to Plaintiff's property.

166.    Through their continued possession, Defendants have converted Plaintiff's property.

167.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered economic damages.

<u>**COUNT V**</u>
**<u>BREACH OF FIDUCIARY DUTY</u>**
**(Defendants Benaiah Capital, LLC, Benaiah Digital, LP, and Benjamin Paul Wiener)**

168.    Plaintiff hereby incorporates by reference the allegations contained in the above paragraphs as if fully set forth herein.

169. Per the terms of the IMA, which granted Defendants power-of-attorney over Plaintiff's property, Defendants had a fiduciary duty to Plaintiff.

170. Defendants also owed a fiduciary duty to Plaintiff under South Dakota common law and by virtue of the Subscription Agreement, which sets out a partnership in which Benaiah Capital was a general partner and Plaintiff and Benaiah Digital were limited partners.

171. With respect to both of these sources of fiduciary duties, Defendants breached their fiduciary duties to Plaintiff and the partnership by:

    a. Converting investor and partner funds for personal benefit, as well as engaging in additional tortious or illegal activity;

    b. Keeping no meaningful or auditable "books," accounting records, or other company financial records in a manner which can be produced to a partner or auditor;

    c. Failing to hold regular board meetings, exercise oversight of the entities, and observe corporate formalities;

    d. Failing to safeguard customer funds;

    e. Not timely obtaining a new fund administrator when NAV's role terminated;

    f. Upon information and belief, concealing from Plaintiff and the partnership the reason for NAV's termination;

    g. Failing to notify Plaintiff and the partnership of the financial distress of the Benaiah Entities;

    h. Failing to notify Plaintiff and the partnership that Plaintiff's Kraken account had been liquidated despite being a substantial portion of the partnership's funds;

    i.   Failing to return Plaintiff's funds to Plaintiff and dishonoring Plaintiff's redemption order and partnership cash-out request;

    j.   Through Wiener's misconduct, exposing the partnership to a range of actual and potential legal claims by investors, lenders, and other creditors;

    k.   Buying and managing cryptocurrencies in a way undisclosed to Plaintiff and in a manner inconsistent with its financial best interests and contrary to the expressed goals of Plaintiff;

    l.   Buying and managing cryptocurrencies in a manner inconsistent with the financial best interests of the partnership; and

    m. Making unauthorized and unjustifiable distributions to Defendant Wiener.

172.    These breaches also constituted a breach of the Defendants' duty of loyalty.

173.    These breaches also constituted a breach of the Defendants' duty to disclose material facts, thereby depriving Plaintiff of the ability to make informed decisions about its money.

174.    As a direct and proximate cause of Defendants' conduct, Plaintiff has sustained economic damages.

## COUNT VI
## BREACH OF CONTRACT
### (Defendants Benaiah Capital, LLC)

175.    Plaintiff hereby incorporates by reference the allegations contained in the above paragraphs as if fully set forth herein.

176.    On 13 December 2021, Plaintiff entered into the written IMA with Defendant Benaiah Capital. The agreement was the result of Plaintiff accepting Defendant's offer to help Plaintiff invest wisely in cryptocurrency.

177.    During that same month, via phone and email communications, the parties negotiated and finalized terms, including total investment amount, investment strategies and risk tolerances, Plaintiff's express investment goals, and how fees would be paid to Defendant.

178.    Section 1 of the IMA recites an agreement that Plaintiff hired Defendant to manage specific investments on its behalf, and obligates Defendant to "monitor Client's Account on an ongoing basis."

179.    In connection with the tortious activity described throughout this complaint, Defendant failed to adequately monitor and safeguard Plaintiff's account, including by keeping its assets safe from conversion by Wiener.

180.    Section 8 of the IMA recites Defendant's obligation to provide quarterly written financial statements of Plaintiff's account.

181.    Defendant has not issued a quarterly financial statement to Plaintiff since 30 November 2024.

182.    Plaintiff performed all of his obligations under the IMA, including by making wire transfers to Defendant on 14 December 2021 and 20 December 2021.

183.    Defendant's conduct constitutes a material breach of the IMA under South Dakota law, which governs the contract per § 15 of the IMA.

184.    As a direct and proximate result of Defendant's breach, Plaintiff has suffered economic damages.

## COUNT VII
## BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING
### (Defendants Benaiah Capital, LLC)

185.    Plaintiff hereby incorporates by reference the allegations contained in the above paragraphs as if fully set forth herein.

186.    As a party to the IMA (hereinafter, "the contract"), Defendant owed Plaintiff a duty of good faith and fair dealing recognized in all contracts governed under South Dakota law.

187.    As a party to the contract, Defendant had an implied duty to act fairly and in good faith towards Plaintiff.

188.    Accordingly, Defendant had a duty to refrain from taking any action which would prevent Plaintiff from receiving the benefits of the contract.

189.    Achieving the common purpose of the contract – mutual profitability – was entirely within the control of Defendant.

190.    Defendant breached its duty of good faith and fair dealing when it engaged in the conduct described in the prior counts, including Defendant Wiener's self-dealing.

191.    Defendant acted unreasonably when it engaged in the aforementioned conduct, acted contrary to the contract's purpose, and acted inconsistent with Plaintiff's justified expectations.

192.    Defendant's conduct violated its duty of good faith and fair dealing by destroying or injuring Plaintiff's right to receive the fruits of the contract.

193.    As a direct and proximate result of Defendant's conduct, Plaintiff has sustained economic damages.

**COUNT VIII**
**AIDING AND ABETTING TORTIOUS CONDUCT**
**(Defendants Joshua Dewitt and Christopher Charles Hmielewski)**

194.    Plaintiff hereby incorporates by reference the allegations contained in the above paragraphs as if fully set forth herein.

195.    As a board member of Benaiah Capital, LLC and its Chief of Staff – and, upon information and belief, as board member and/or employee and/or agent of the remaining Benaiah

Entities – Defendant Hmielewski served as the nerve center of the daily operations of the Benaiah Entities. His role gave him authority over all employees, which he used to carry out the operational and financial directives of Defendant Wiener in perpetrating his tortious conduct to Plaintiff's detriment. These directives included supervising financial accounts, moving money between accounts, overseeing crypto trading activities, and managing client interactions.

196.    As a board member and chief investment officer of Benaiah Co., Dewitt oversaw and personally executed cryptocurrency trades of all of Benaiah Entity clients, including Plaintiff. This includes purchases and sales of cryptocurrency through Plaintiff's funds at Benaiah Capital, and Benaiah Digital. He held this role until 2025 when, upon information and belief, he had a "falling out" with Wiener. He was active in this role during the periods of fraudulent and tortious conduct alleged in this Complaint.

197.    Defendants Hmielewski and Dewitt had direct knowledge of Wiener's lack of education, experience, and training with regard to hedge funds, investments, and cryptocurrency. Defendants Hmielewski and Dewitt also knew that Benaiah Capital and Benaiah Digital kept no meaningful accounting records. In fact, Defendants Wiener, Hmielewski, and Dewitt acted pursuant to an agreement to place Dewitt in charge of cryptocurrency transactions at the Benaiah Entities specifically because Wiener did have the technical ability to perform said transactions. Despite their insider knowledge, neither Hmielewski nor Dewitt warned Plaintiff of any of Wiener's conduct.

198.    Contrary to South Dakota law, Defendants Wiener and the Benaiah Entities engaged in the tortious conduct described in the prior counts, thereby causing financial injury to Plaintiff.

199.    Defendants Hmielewski and Dewitt knew or should have known that Defendant Wiener and the Benaiah Entities were going to, and in fact did, engage in tortious conduct against Plaintiff.

200.    By executing Defendant Wiener's orders, Defendants Hmielewski and Dewitt substantially encouraged and/or substantially assisted Defendant Wiener and the Benaiah Entities in committing tortious conduct by carrying out Wiener's directives and reinforcing his material misrepresentations to Plaintiff.

201.    A causal relationship exists between the assistance and/or encouragement of Defendants Hmielewski and Dewitt and the conduct of the remaining Defendants, as Wiener could not have executed his fraudulent artifice without the technical and logistical assistance of these two defendants.

202.    Defendants Hmielewski and Dewitt personally profited and enriched themselves at the expense of Plaintiff and its assets because of the conduct of the remaining Defendants.

203.    The actions of Defendants Hmielewski and Wiener and the remaining defendants were intentional and wrongful conduct motivated by spite, ill will, or reckless disregard.

204.    The actions of Defendants Hmielewski and Dewitt were (a) intentional; (b) done to serve their own interests, having reason to know and consciously disregard the substantial risk that his conduct might significantly injure the rights of Plaintiff; or (c) in a conscious pursuit of conduct knowing that it created a substantial risk of harm to Plaintiff.

205.    Defendants, then, should be held jointly and severally liable.

**COUNT IX**
**UNJUST ENRICHMENT**
**(All Defendants)**

206.    Plaintiff hereby incorporates by reference the allegations contained in the above paragraphs as if fully set forth herein.

207.    Defendants collected from Plaintiff's funds a plethora of undeserved and unearned fees for services rendered to Plaintiff pursuant to the IMA and Subscription Agreement.

208.    Defendants collected these fees in spite of the fact that they breached their fiduciary duties to Plaintiff as described in the prior counts.

209.    Under South Dakota law, Defendants' self-payments for their services provided Defendants with an unlawful benefit at Plaintiff's expense, to which Defendants have no right.

210.    Defendants would not have received the unlawful benefit but for their wrongful conduct, and it is inequitable to allow Defendants to retain their fees.

211.    Defendants have been unjustly enriched to Plaintiff's detriment.

212.    As a direct and proximate result of Defendants' unjust enrichment, Plaintiff has sustained economic damages.

## COUNT X
## PUNITIVE DAMAGES
**(Defendants Benaiah Holdings, Inc., Benaiah Capital, LLC, Benaiah Digital, LP, Benjamin Paul Wiener, Joshua Dewitt and Christopher Charles Hmielewski)**

213.    Plaintiff hereby incorporates by reference the allegations contained in the above paragraphs as if fully set forth herein.

214.    In engaging in the conduct described in this complaint, Defendants acted with willful and wanton disregard, and conscious indifference, for Plaintiff's rights, resulting in willful and malicious injury by Defendants to Plaintiff.

215.    Defendants acted intentionally and/or to serve their own interests and, having reason to know or consciously disregarding the substantial risk that their conduct might injure the

35

rights of Plaintiff, consciously pursued a persistent course of conduct of an unreasonable character, knowing that it created a substantial risk of harm to the Plaintiff.

216.    Defendants engaged in the above-described tortious conduct to enrich themselves and prop up their reputations in the community and keep the Benaiah Entities in business.

217.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered economic damages.

218.    As a result, Defendants should be required to respond to Plaintiff in the form of a punitive damages award.

**COUNT XI**
**ACCOUNTING**
**(Benaiah Holdings, Inc., Benaiah Capital, LLC and Benaiah Digital, LP)**

219.    Plaintiff hereby incorporates by reference the allegations contained in the above paragraphs as if fully set forth herein.

220.    At all times material hereto, Plaintiff was a limited partner in Benaiah Digital, along with general partner Benaiah Capital.

221.    As a limited partner, Plaintiff has a right to inspect the books of Benaiah Digital, at a minimum.

222.    As a result of that partnership, a fiduciary relationship existed between Plaintiff and Defendants.

223.    Defendants materially violated their fiduciary duties to Plaintiff, as set forth in the prior counts.

224.    Defendants used multiple entities, including the Defendants named in this count, to facilitate the conduct constituting said breaches.

225.    As a direct and proximate result of those breaches, Plaintiffs incurred and continue to incur damages.

226.    Plaintiffs are presently unable to obtain a complete and final ascertainment of damages, as the information necessary to determine Defendants' financial condition is within the exclusive control of these Defendants and Defendant Wiener, in part because of the tortious conduct itself.

227.    Defendant has refused to cooperate with Plaintiff's efforts to obtain material financial information concerning Benaiah Digital and related entities.

228.    Plaintiff, therefore, should be granted access to material information concerning Benaiah Digital, and related entities.

<u>**COUNT XII**</u>
<u>**APPOINTMENT OF A RECEIVER**</u>
**(Defendants Benaiah Holdings, Inc, Benaiah Capital, LLC,
Benaiah Digital, LP, and Benaiah Digital Fixed Income, LP)**

229.    Plaintiff hereby incorporates by reference the allegations contained in the above paragraphs as if fully set forth herein.

230.    The fraud, deception and misappropriation of investor funds perpetrated by Defendants – and the network of corporate entities used in the scheme – warrants immediate appointment of a receiver to (i) control, possess, and preserve any Benaiah Entities' assets, (ii) halt any attempts to hide, transfer, or dissipate Benaiah Entities' assets, (iii) trace and recover any ill-gotten assets or their value from third parties, and (iv) pursue any viable causes of action.

231.    Upon information and belief, management of the Benaiah Entities, including Wiener, have engaged in significant, ongoing misrepresentations and fraud relating to the investments and nature of the business.

232.    Upon information and belief, this misconduct has rendered each of the Benaiah Entities imminently insolvent, if not already insolvent.

233.    Upon information and belief, the Benaiah Entities are not honoring investor redemptions nor paying their debts as they become due.

234.    Upon information and belief, the FBI and IRS conducted raids of the Krohn Address and Wiener's personal residence on or about 26 June 2025, relating to the unlawful and deceptive investment practices described herein.

235.    Accordingly, appointment of a receiver is necessary to protect and prevent the dissipation of the Benaiah Entities' assets, preserve the status quo while various transactions are evaluated to determine an accurate picture of the fraudulent conduct, and take actions necessary to protect the interest of the creditors, including the Trust and other investors.

236.    Based upon the foregoing allegations, the appointment of a receiver pursuant to Fed. R. Civ. P. 66 and either a pure federal common law or in combination with South Dakota law, is appropriate in this case.

237.    The Trust is concurrently filing a Motion to Appoint a Receiver, supporting Memorandum of Law, and Proposed Order Granting Motion to Appoint a Receiver.

238.    The Proposed Order Granting Motion to Appoint a Receiver seeks to grant the receiver the following powers and responsibilities, among others: (1) to take sole and exclusive possession of the Benaiah Entities' assets, (2) to take possession of the books and records pertaining to the Benaiah Entities' businesses, whether in Defendants' possession or in the possession of any persons employed or previously employed by the Benaiah Entities, (3) to protect and prevent the dissipation of the Benaiah Entities' assets, (4) install a responsible officer of the

court to oversee the operations of the Benaiah Entities, which may include liquidation, and (5) pursue any claims and causes of action that the Benaiah Entities may have against third parties.

239.    The Trust respectfully requests that the Court promptly appoint Lighthouse Management Group, Inc. (hereinafter, "Lighthouse") as a general receiver over the Benaiah Entities' assets and operations for a period commencing on the date of this Court's Order formally appointing Lighthouse as receiver and ending upon termination of such appointment by further Order of this Court.

## PRAYER FOR RELIEF

**NOW, THEREFORE,** the Trust, prays for judgment against the Defendants as follows:

a.    Holding Defendants liable, jointly and severally, for their conduct;

b.    On Count I, an award of treble damages as permitted or required by law, in an amount no less than $16,000,000 and an award of attorney's fees pursuant to 18 U.S.C. § 1964(c);

c.    On Counts I-IX, an award of actual damages, in an amount no less than $4,000,000.00;

d.    On Count X, an award of punitive damages not to exceed four times Plaintiff's actual damages, or $16,000,000.00;

e.    On Count XI, an Order directing Defendants Benaiah Holdings, Inc., Benaiah Capital, LLC, and Benaiah Digital, LP to – within 72 hours of the Order's entry – produce or otherwise permit to be examined its accounting records;

f.    On Count XII, an Order Granting Appointment of a Receiver providing for the appointment of Lighthouse Management Group, Inc. as Receiver of the Defendants either a pure federal common law or in combination with South Dakota law;

g.     An award of interest and costs; and

h.     Such other and further relief as the court deems just and proper.

### JURY TRIAL DEMAND

Plaintiff demands trial by jury for all issues so triable.

<table>
<tr><td>

**Certificate of Service**
The undersigned certifies that the foregoing instrument was served upon counsel of the parties to this action on November 17, 2025, by CM/ECF.

/s/ *Alexandra E. Dugan*

Courtesy copies by email only to:

Jeremy R. Jehangiri
UNITED STATES DEPARTMENT OF JUSTICE
P.O. Box 2638
Sioux Falls, SD 57101
Phone: 605.330.4400
Fax: 605.330.4400
jeremy.jehangiri@usdoj.gov

ATTORNEY FOR THE UNITED STATES

</td><td>

BRADLEY ARANT BOULT CUMMINGS LLP

By: /s/ *Alexandra E. Dugan*
   Alexandra E. Dugan, #5426 (South Dakota)

ONE 22 ONE, 1221 Broadway, Suite 2400
Nashville, TN 37203
Phone: 615.252.4638
Fax: 615.252.4705
Email: adugan@bradley.com

ZENOR LAW FIRM PLC
Adam D. Zenor, AT0009698 (Iowa)
Joseph R. Casey, AT0014276 (Iowa)
106 SW 7th St., Suite 400
Des Moines, IA 50309
Phone: 515.650.9005
Fax: 515.206.2654
adam@zenorlaw.com
joe@zenorlaw.com
*Admitted Pro Hac Vice*

ATTORNEYS FOR PLAINTIFF
TIMOTHY A. KINNETZ as trustee of THE TIMOTHY A. KINNETZ REVOCABLE TRUST

</td></tr>
</table>

**VERIFICATION**

I, Timothy A. Kinnetz as Trustee of the Timothy A. Kinnetz Revocable Trust, hereby declare under the laws of the United States of America that I have read the foregoing First Amended Complaint and know the contents thereof. The matters and things stated herein are true to the best of my knowledge, except those matters therein stated upon information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct.

DATED October 02, 2025

SIGNED _____

Timothy A. Kinnetz