UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| TIMOTHY A. KINNETZ as trustee of THE TIMOTHY A. KINNETZ REVOCABLE TRUST,<br><br>    Plaintiff,<br><br>vs.<br><br>BENAIAH HOLDINGS, INC., BENAIAH CAPITAL, LLC, BENAIAH DIGITAL, LP, BENAIAH DIGITAL FIXED INCOME, LP, BENJAMIN PAUL WIENER, individually; JOSHUA DEWITT, individually, and CHRISTOPHER CHARLES HMIELEWSKI, individually, BENAIAH ENTERPRISES LLC, BENAIAH MANAGEMENT COMPANY, INC., RUNWAY FOUR10 LLC, TRIPLE POINT TRADING LLC, and RONALD J. GASCA, JR., individually,<br><br>    Defendants. | Case No. 4:25-cv-04134 - CCT<br><br>**BRIEF IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT** |

Defendants Benaiah Holdings, Inc., Benaiah Capital, LLC, Benaiah Digital, LP, Benaiah Digital Fixed Income, LP, Benjamin Paul Wiener, Christopher Charles Hmielewski, Benaiah Enterprises LLC, Benaiah Management Company, Inc., Runway Four10 LLC, Triple Point Trading LLC and Ronald J. Gasca, Jr. (collectively "Moving Defendants")[1] move to dismiss the First Amended Complaint [Doc. 97] filed by Plaintiff, Timothy A. Kinnetz as Trustee of The

---

[1] The First Amended Complaint adds the following additional defendants: Benaiah Enterprises LLC, Benaiah Management Company, Inc., Runway Four10 LLC, Triple Point Trading LLC and Ronald J. Gasca, Jr. All entity defendants are subject to a Receivership Order filed November 10, 2025. [Doc. 95] The Receiver has represented to the undersigned counsel that Kutak Rock LLP is authorized to represent Defendant Benjamin Paul Wiener ("Wiener") in all matters relating to the appointment of the Receiver, which presumably entails Mr. Wiener's direction to represent all Defendants in this case except Defendant Joshua DeWitt.

1

Timothy A. Kinnetz Revocable Trust ("Mr. Kinnetz") pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)6).

## I. INTRODUCTION

In his Amended Complaint, Mr. Kinnetz abandons any attempt to establish subject-matter jurisdiction under diversity of citizenship. Mr. Kinnetz instead now attempts to establish federal question jurisdiction by bringing a claim for violations of federal law under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 ("RICO"), et seq. [Doc. 97, Am Compl. ¶ 19]. As demonstrated in this Brief, the RICO claim is barred under the Private Securities Litigation Reform Act of 1995, which amended RICO to exclude "predicate acts" that would have been actionable as federal securities fraud. Mr. Kinnetz's new federal question claim also falls far short of fundamental RICO pleading requirements. As a result of these deficiencies, the RICO claim (Count 1) of the Amended Complaint is subject to dismissal for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6), and the entire Amended Complaint is subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(1) for want of subject-matter jurisdiction.

## II. STATEMENT OF RELEVANT FACTS IN AMENDED COMPLAINT

In the Amended Complaint, Mr. Kinnetz alleges:

> "2.    This is a matter in which an investor seeks, among other remedies, a receivership of a South Dakota hedge fund, its principal, and its tightly-controlled affiliate entities on the grounds of financial fraud, conversion, fraudulent conveyances, and other fraudulent and tortious conduct which has affected numerous investors, including Plaintiff, across several states. ********
>
> 19.    This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as Plaintiff's claims include a cause of action pursuant to 18 U.S.C. § 1954(a) [sic][2] and the amount in

---

[2] 18 U.S.C. § 1964(a)

controversy is in excess of $75,000.00.  ********

31.  Wiener stated, during the period of [Mr. Kinnetz's] investment with the Benaiah Entities, the Trust would receive monthly investor statements to keep Mr. Kinnetz apprised of the Trust's investments as well as the associated costs, fees, and gains or losses.

32.  The Trust's attorney reviewed the investment documents, recommended proceeding with the investment, and the Trust signed the required paperwork in December 2021 to formalize a $4,000,000.00 investment in two of Wiener's entities: Benaiah Capital and Benaiah Digital.  ********

62.  In a Form D filed with the Securities and Exchange Commission on 19 April 2021, Benaiah Digital ,,,, describes itself as a "hedge fund" managed by Wiener and offering "pooled investment fund interests." The form does not disclose revenue but lists "minimum investment" as $100,000.00. **Exhibit F.  ********

70.  On 14 December 2021, at the direction and behest of the Trust, Northwest Wealth Management transferred via wire $1,000,000.00 from the Trust's TD Ameritrade account to Benaiah Digital's account at Peoples Bank in Rock Valley, Iowa.

71.  Six days later, on 20 December 2021, the Trust transferred via wire $3,000,000.00 from the Trust's Bank Midwest account to an account at MVB Bank belonging to Payward Ventures, Inc., a major cryptocurrency exchange called "Kraken" through which Wiener established a cryptocurrency trading account on behalf of the Trust.

72.  Mr. Kinnetz transferred these funds pursuant to his understanding with Wiener, based on numerous email and Zoom conversations between Mr. Kinnetz and Wiener (many of which involved the Mr. Kinnetz's wealth advisor, CPA, and attorney).

73.  Specifically, Mr. Kinnetz and Wiener agreed that $1,000,000.00 of Trust money would be invested through Benaiah Digital's investment fund.

74.  Mr. Kinnetz understood that Wiener would invest these funds as he saw fit, based on Wiener's best judgment in whatever he believed would provide a return on investment, including higher risk digital assets such as "altcoins," or new and less-capitalized emerging projects associated with unique tokens or other digital assets. While this sounds somewhat speculative, Mr. Kinnetz trusted Wiener's purported reputation for superior investment and

cryptocurrency experience.

75. Mr. Kinnetz and Wiener also agreed that Benaiah Capital would manage $3,000,000.00 of Trust money in its Kraken account, which would be under the sole control and view of Wiener and his employees.

76. Under this plan, Benaiah Capital would manage these funds for the purpose of buying and holding the cryptocurrency-equivalent of "blue chip" stocks; in other words, less-speculative, established digital assets with established use cases and relatively high rates of institutional and consumer adoption.

77. At no time did Mr. Kinnetz authorize taking on additional risk, including lending, staking, or purchase of options contracts or trading on margin.

78. The investment relationships described above were governed in part by Benaiah Digital's Subscription Booklet (hereinafter, the "Subscription Agreement") and Benaiah Capital's Investment Management Agreement (hereinafter, the "IMA").

79. The Subscription Agreement provides that, upon acceptance of the Trust's investment of $1,000,000.00, the Trust becomes a limited partner of Benaiah Digital with a discrete percentage interest. **Exhibit G** at 3(a).

80. The IMA requires Benaiah Capital to manage the investment and reinvestment of the Trust's assets in accordance with the Trust's objectives as communicated by Mr. Kinnetz. **Exhibit H** at § 1, ¶ 1.
\*\*\*\*\*\*\*\*

84. In early 2022, the balance of the Trust's Kraken account, managed by Benaiah Capital, totaled $3,138,792.50.

85. For approximately the first year of the Trust's investments with Benaiah, Wiener kept in close touch with Kinnetz and his team. Among his efforts were regular attendance, via Zoom, at Kinnetz's meetings of advisors, wherein Wiener would provide detailed summaries of the status of the Trust's investments through its Kraken and Benaiah Digital accounts

86. The Trust generally received regular investment reports and statements through the first year.

87. In early winter 2022, the global crypto market experienced a major crash, causing the assets held by the Trust to plummet in value.

88. Relying on the advice of its tax professionals and wealth managers, the Trust directed Benaiah Capital to realize $2,005,106.00 in capital losses for Tax Year 2022. This "tax loss harvesting" strategy was made with the assurance from Benaiah and Wiener that it would "reinvest" in crypto assets after the realized loss, with the goal of positioning the account for future capital gains. Kinnetz directed Wiener to reinvest these funds, and Wiener agreed to do so. ********

96. On 30 November 2024, the Trust received a statement from Benaiah Digital listing the Trust's balance as $956,124.53 (hereinafter, the "November Statement").

97. The November Statement was the last statement that the Trust received. ********

107. On 15 March 2025, the Trust's attorney recused himself from Trust business after he disclosed to Mr. Kinnetz that he had been serving as counsel for Wiener and the Benaiah Entities at the same time as he served as General Counsel for the Kinnetz Family Office and an attorney for the Kinnetz family and their entities. ********

## COUNT I

**Racketeering In Violation Of 18 U.S.C. § 1962(C) (Defendants Benaiah Holdings, Inc; Benaiah Capital, LLC; Benaiah Digital, LP; Benjamin Paul Wiener; Benaiah Enterprises LLC; Benaiah Management Company, Inc.; Runway Four10 LLC; Triple Point Trading, LLC; and Ronald J. Gasca, Jr.)**

126. Plaintiff hereby incorporates by reference the allegations contained in the above paragraphs as if fully set forth herein.

127. Defendants Benaiah Holdings; Benaiah Capital; Benaiah Digital Benjamin Paul Wiener; Benaiah Enterprises LLC; Benaiah Management Company, Inc.; Runway Four10 LLC; Triple Point Trading, LLC; and Ronald J. Gasca, Jr. ("collectively, the RICO Defendants") are a group of individuals and corporate entities that were and are engaged in interstate commerce and are associated in fact for the common and shared purpose of (1) profiting by managing investor funds and trading cryptocurrency, while also engaged in criminal acts; (2) operating a fraudulent hedge fund under the umbrella of "Benaiah Co." to steal digital assets and cash from Plaintiff after convincing him to send cash to them directly and to an exchange account under their control; (3) funneling Plaintiff's cash and cryptocurrency through more than two dozen blockchain wallets

and bank accounts designed to mask the origin and destination of those stolen funds or assets; (4) using those stolen funds or assets to engage in transactions contrary to the written and verbal representations made by Defendants Benaiah Capital, LLC, Benaiah Digital, LP, and Wiener; and (5) using funds and assets converted from other illegal enterprises to deceive Plaintiff into believing the RICO Defendants could and would make Plaintiff whole.

128. The RICO Defendants operated the enterprise together.

129. The RICO Defendants each participated in the operation and management of the enterprise with the goal of accomplishing the same common and shared purpose.

130. As alleged in detail throughout this Complaint, the RICO Defendants intentionally and knowingly engaged in a pattern of racketeering activity from 2021 to present, including transmissions by means of wire, radio, or television communication with intent to defraud Plaintiff. These predicate acts – which span 2021 to 2025 – include, but are not limited to:

> (a) Intentionally using the U.S. Postal Service to regularly mail to Plaintiff knowingly false or materially misleading financial statements in furtherance of the RICO Defendants' fraudulent scheme to convert Plaintiff's funds;
>
> (b) Intentionally using interstate wires, including cellular telephone service, text messaging, email, and other internet communications to knowingly provide Plaintiff false or materially misleading information in furtherance of the RICO Defendants' fraudulent scheme to convert Plaintiff's funds;
>
> (c) Intentionally using interstate wires, including bank wire transfers, to knowingly receive Plaintiff's fraudulently induced transfers of funds, disguise the destinations of those funds, convert those funds for themselves, and receive funds from other investors in order to defraud Plaintiff into believing that Defendant Wiener was still in possession of Plaintiff's funds and in furtherance of the RICO Defendants' fraudulent scheme to convert Plaintiff's funds.
>
> (d) Intentionally using interstate wires, including internet communications and bank wire transfers, to knowingly receive funds from Plaintiff with the intent

of defrauding it into believing that it had invested in cryptocurrency; knowingly creating a software account and manipulating that account in a manner designed to defraud Plaintiff into believing it showed the real-time location and value of his cryptocurrency; then knowingly and secretively converting Plaintiff's cryptocurrency or liquidating it before converting the liquidated sum, all in furtherance of the RICO Defendants' fraudulent scheme to convert Plaintiff's funds.

131. As alleged in detail throughout this Complaint, the RICO Defendants knowingly and intentionally engaged in a pattern of racketeering activity that included engaging in monetary transactions in property derived from criminally obtained property and unlawful activity.

132. As alleged in detail throughout this Complaint, the RICO Defendants knowingly and intentionally engaged in a pattern of racketeering activity that included conducting financial transactions with intent to promote the carrying-on of specified unlawful activity and/or to conceal or disguise the nature, location, source, ownership, and proceeds of specified unlawful activity.

133. As alleged in detail throughout this Complaint, the RICO Defendants knowingly and intentionally engaged in a pattern of racketeering activity that included engaging in monetary transactions in property derived from specified unlawful activity and investing or lending racketeering income by using the stolen assets for investments or lending them to a third party in pursuit of a profitable return.

134. The predicate acts of the RICO Defendants are not isolated events; they are part of a widespread scheme to defraud other unsuspecting investors for the same or similar purposes and to achieve the same or similar results through the same or similar methods.

135. The RICO Defendants each had their own roles in the enterprise and maintained those roles through the course of the scheme, and each personally conducted the affairs of the enterprise. For example:

- Wiener recruited investor money with false promises and kept investors from successfully redeeming their balances, and effectuated transfers of cash and cryptocurrency from Benaiah Capital and Benaiah

7

> Digital to himself and the other RICO Defendants, including Benaiah Holdings, Benaiah Enterprises, and Benaiah Management Company.
>
> • Weiner, Benaiah Capital, and/or Benaiah Digital then transferred approximately $672,000 to Benaiah Holdings, $780,000 to Benaiah Management, and $25,000 to Benaiah Enterprises.
>
> • Wiener used Runway Four10 to recruit new investors, then wired $125,000 of those investor funds from Runway Four10 to Benaiah Capital to mislead Benaiah Capital and Benaiah Digital investors into believing Benaiah Capital and Benaiah Digital were solvent.
>
> • Using the brand of Defendant Triple Point Trading and cooperation of Defendant Gasca, Wiener used Runway Four10 to send new investor funds offshore to the Weex exchange to mislead Benaiah Capital and Benaiah Digital investors into believing that Benaiah Capital and Benaiah Digital were solvent;

136.   As a natural and foreseeable consequence of the enterprise, Plaintiff lost more than $4,000,000.

### III.  LEGAL STANDARD

This Court has recently set forth the appropriate standard for reviewing the sufficiency of a RICO claim when a Rule 12(b)(6) is filed:

> "On a motion to dismiss under Rule 12(b)(6), courts must accept a plaintiff's factual allegations as true and construe all inferences in the plaintiff's favor but need not accept a plaintiff's legal conclusions….
>
> "When pled as RICO predicate acts, mail and wire fraud require a showing of: (1) a plan or scheme to defraud, (2) intent to defraud, (3) reasonable foreseeability that the mail or wires will be used, and (4) actual use of the mail or wires to further the scheme."  *Wisdom v. First Midwest Bank*, 167 F.3d 402, 406 (8th Cir. 1999).
>
> Rule 9(b) of the Federal Rules of Civil Procedure requires parties alleging fraud to "state with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b), and "applies to allegations of mail and wire fraud," *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 921 (8th Cir. 2001).  *See also Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 428-29 (8th Cir. 2009) (same).  Such circumstances include "the time, place and contents of false representations, as well as the identity of the person

> making the misrepresentation and what was obtained or given up thereby." *H & Q Props., Inc. v. Doll*, 793 F.3d 852, 856 (8th Cir. 2014) (cleaned up and citations omitted). Rule 9(b) is to be interpreted "in harmony with the principles of notice pleading." *Star City Sch. Dist. v. ACI Bldg. Sys., LLC*, 844 F.3d 1011, 1016 (8th Cir. 2017) (citation omitted). "This higher degree of notice is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations." *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009) (cleaned up and citations omitted). Facts "peculiarly within the opposing party's knowledge" may be pleaded on information and belief, but conclusory allegations of fraud or deception are insufficient to satisfy the rule. *Id.* at 783-84."

*Parker Stewart v. Plains Commerce Bank*, 4:25-CV-04007-RAL, 2025f WL 2712496 at *5, (D. S.D. Sept. 23, 2025).

## IV. ARGUMENT

### A.  PLAINTIFF'S RICO CLAIM FAILS AS A MATTER OF LAW.

The elements of a RICO claim brought under 18 U.S.C. § 1962(c) are "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity" that (5) caused injury to the plaintiff's "business or property by the conduct constituting the violation." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). Mr. Kinnetz fails to sufficiently plead a viable claim for violation of 18 U.S.C. § 1962(c) under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

#### 1. *Acts that are Actionable as Securities Fraud Are Excluded from the Definition of Predicate Acts Under RICO.*

In the Amended Complaint, the RICO claim is barred by operation of law under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which amended the RICO statute to exclude acts that would have been actionable as securities fraud as a "predicate act" under RICO ("RICO Amendment Bar"). In the Amended Complaint, Mr. Kinnetz alleged that the predicate acts committed by the RICO Defendants were "part of a widespread scheme to defraud other unsuspecting investors." [Am. Compl. ¶ 134]. Mr. Kinnetz is claiming fraud associated with his investment of $4 million in two Benaiah entities. [*Id.* ¶ 78]. This is fatal to Mr. Kinnetz's RICO claim.

9

The alleged predicate acts of mail fraud and wire fraud contained in the Amended Complaint are directly linked to $4 million of investments made by Mr. Kinnetz in two entities operated by Mr. Wiener. Mr. Kinnetz alleges his "attorney reviewed the investment documents, recommended proceeding with the investment, and [that Mr. Kinnetz] signed the required paperwork in December 2021 to formalize a $4,000,000.00 investment in two of Wiener's entities: Benaiah Capital and Benaiah Digital." [*Id.* ¶ 32]. [*See also id.* ¶¶ 71-76, 79-80]. Mr. Kinnetz further alleges: "The investment relationships described above were governed in part by Benaiah Digital's Subscription Booklet (hereinafter, the "Subscription Agreement") and Benaiah Capital's Investment Management Agreement (hereinafter, the "IMA")." *Id.* ¶ 78.

Significantly, while the trading of Bitcoin and similar digital assets are not currently regulated by the SEC, the solicitation of investments by a limited partnership or a limited liability company is subject to the antifraud provisions of the federal securities laws if the solicitation involves the offer or sale of "investment contracts." *See SEC v. Howey*, 328 U.S. 293, 298-99 (1946) ("an investment contract for purposes of the Securities Act means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party"). The Amended Complaint is replete with allegations showing that Mr. Kinnetz invested $4 million in "investment contracts," [e.g., ¶¶ 71-76, 79-80], and thus the antifraud provisions of the federal securities laws apply.

Under the RICO Amendment Bar, if the alleged fraudulent activity is actionable under the antifraud provisions of the securities laws, a RICO claim cannot be brought. "The PSLRA expressly eliminated that category of conduct as a predicate offense in a private RICO action. Section 107 of the PSLRA amended 18 U.S.C.A. § 1964(c) to provide that "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to

4912-3703-7691

establish a [RICO] violation . . . ." 2 Publicly Traded Corporations Handbook, PSLRA's RICO Bar §7:30 (June 2025 Update).

In *Gatz v. Ponsoldt*, 297 F. Supp 2d 719, 730 (D. Del. 2003), the court described the RICO Amendment Bar created by the PSLRA as follows:

> "Section 107 of the PSLRA provides that 'no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962.' 18 U.S.C. § 1964(c) ("RICO Amendment"). The Third Circuit has held that under § 1964(c) "a plaintiff cannot avoid the RICO Amendment's bar by pleading mail, wire fraud and bank fraud as predicate offenses in a civil RICO action if the conduct giving rise to those predicate offenses amounts to securities fraud." *Bald Eagle Area Sch. Dist. v. Keystone Financial, Inc*., 189 F.3d 321, 328 (1999). The proper test is whether "the conduct pled as predicate offenses is actionable as securities fraud."

In *Gatz*, the court stated: "A plaintiff cannot circumvent the PSLRA's exclusion of securities fraud as a RICO predicate act through artful pleading . . .. *See In re Enron Corp. Securities, Derivative & ERISA Litig.*, 284 F.Supp.2d 511, 620 (S.D.Tex.2003) ("The RICO Amendment bars claims based on conduct that could be actionable under the securities laws even when the plaintiff, himself, cannot bring a cause of action under the securities laws.)." *Id.* at 731.

The *Gatz* Court also stated that the RICO Amendment Bar precluded all RICO claims arising from the alleged fraudulent scheme:

> "[T]he predicate acts alleged by the plaintiffs consist of the use of mails and wires in "furtherance of this fraudulent scheme." (D.I. 325 at 23) That exact same conduct, the use of mails and wires in furtherance of a fraudulent scheme, is securities fraud when done in connection with the purchase or sale of securities. *See* 17 C.F.R. § 240.10b–5. The PSLRA acts as an absolute bar to RICO claims predicated upon conduct which could have been actionable as securities fraud."

*Id*. at 732.

Other courts have recognized the expansive scope of the bar for the asserting RICO claims when plaintiffs are alleging claims arising out of conduct that "could have been actionable as securities fraud." *See MLSMK Investment Company v. JP Morgan Chase & Co*., 651 F.3d 268,

11

273-80 (2d Cir.2011); *Bixler v. Foster*, 596 F.3d 751, 760 (10th Cir. 2010); *Swartz v. KPMG LLP*, 470 F.3d 756, 761 (9th Cir. 2007); Business and Commercial Litigation in Federal Courts, 12 Bus. & Com. Litig. Fed. Cts. § 126:7 (5th ed. Nov. 2025 Update) (citing cases).

Here, Mr. Kinnetz has alleged fraudulent conduct that could have been actionable as securities fraud. Throughout the Amended Complaint, Mr. Kinnetz refers to a fraudulent scheme that injured investors. Under these circumstances, Mr. Kinnetz cannot bring a RICO claim because the RICO Amendment Bar prohibits reliance on predicate acts that could have been actionable as securities fraud when alleging predicate acts or a pattern of racketeering activity under RICO. Thus, the RICO Count in the Amended Complaint is subject to dismissal under Rule 12(b)(6).

### 2. *Plaintiff Has Failed to Allege Facts Sufficient to Satisfy the Enterprise Element of a Civil RICO Claim*

Mr. Kinnetz fails to allege a legally cognizable RICO enterprise. A RICO enterprise is "a group of persons associated together for a common purpose," and is proven by "evidence of an ongoing organization, formal or informal" and "evidence that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981). The Supreme Court in *Turkette* instructed that an enterprise is not a "pattern of racketeering activity" and must be "an entity separate and apart from the pattern of activity in which it engages." 452 U.S. at 583.

In direct violation of *Turkette*, the Amended Complaint describes an association-in-fact enterprise that has no separate identity from the alleged pattern of racketeering activity. Mr. Kinnetz alleges an association-in-fact enterprise comprised of all the RICO Defendants and makes no attempt to separate the "enterprise" from the alleged pattern of fraudulent activity. [Am. Compl. ¶ 127].

In the Eighth Circuit, a RICO enterprise must exhibit an independent structure "separate from the racketeering activity" and have "an 'ascertainable structure' distinct from that inherent in

12

the conduct of a pattern of racketeering activity." *United States v. Bledsoe*, 674 F.2d 647, 664-65 (8th Cir. 1982), cert. denied, 459 U.S. 1040 (1983). Mr. Kinnetz has alleged that the purpose of the association-in-fact enterprise and the alleged fraudulent activity are one and the same – and further has alleged the fraud involves "a widespread scheme to defraud unsuspecting investors." [Am. Compl. ¶ 134]. Accordingly, Mr. Kinnetz has failed to satisfy the *Turkette* requirement that the RICO enterprise be distinct from the alleged pattern of racketeering activity. For this reason alone, the RICO claim fails.

### 3. *The "Person[s]" who are the RICO Defendants Must Be Distinct from the RICO Enterprise.*

Mr. Kinnetz alleges all the RICO Defendants comprise the RICO enterprise. [Am. Comp. ¶ 127]. Thus, the "person[s]" who are accused of violating 18 U.S.C. § 1962(c) are identical to the "enterprise," the affairs of which the RICO Defendants are allegedly "conduct[ing] or participat[ing]" in conducting. This violates the requirement that the "person" who allegedly violates § 1962(c) must be distinct from the "enterprise." The Supreme Court has recognized that to establish liability under § 1962(c), a plaintiff must allege and prove the existence of two distinct entities: (1) a "person," and (2) an "enterprise" that is not simply the same "person" referred to by a different name. *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161-62 (2001). Mr. Kinnetz has violated this well-established principle.

### 4. *Mr. Kinnetz Fails to Plead His Alleged Injuries Were Proximately Caused by the Purported Predicate Acts*

"Section 1964(c) of RICO provides a right of action to '[a]ny person injured in his business or property *by reason of* a violation of section 1962 of this chapter . . ..'" 18 U.S.C. § 1964(c) (emphasis added). The plaintiff's injury must be proximately caused by the racketeering activity. *Holmes v. Sec Investor Prot. Corp.*, 503 U.S. 258, 268 (1992). The connection between the injury and the activity cannot be too "remote." *Id.* at 268-72. In assessing the sufficiency of

the link between the plaintiff's injury and the racketeering activity, simple "but for" causation does not suffice; common law concepts of proximate cause must be used. *Id.* at 268.

The plaintiff in *Holmes*, an investor protection fund, alleged that the defendant's wrongful acts prevented two brokers from meeting obligations to customers, which in turn triggered the plaintiff fund's statutory duty to reimburse the customers. *Id.* at 261. The Supreme Court held that the plaintiff's injury was too remote and insufficiently connected to the predicate acts to uphold a **RICO** claim. *Id*. at 271. In a more recent Supreme Court case, *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006), the Supreme Court stated that "[w]hen a court evaluates a **RICO** claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Id*. at 461.

Mr. Kinnetz has failed to allege he suffered actual harm caused by the predicate acts. Unless Mr. Kinnetz can plead actual harm, he may not maintain a RICO action. In *Sedima*, the Supreme Court declared "the compensable injury necessarily is the harm caused by the predicate acts sufficiently related to constitute a pattern [because] the essence of the violation is the commission of those acts in connection with the conduct as an enterprise." 473 U.S. at 497.

Mr. Kinnetz has alleged that in early 2022, the $3 million invested in Benaiah Capital was now worth $3,138,792.50. [Am. Compl. ¶ 84]. Mr. Kinnetz then alleges: "In early winter 2022, the global crypto market experienced a major crash, causing the assets held by the Trust to plummet in value." [*Id*. ¶ 87]. As a result of admitted market losses, Mr. Kinnetz alleges: "Relying on the advice of its tax professionals and wealth managers, the Trust directed Benaiah Capital to realize $2,005,106.00 in capital losses for Tax Year 2022." [*Id*. ¶ 88]. Thus, in 2022, Mr. Kinnetz voluntarily took a $2 million loss for tax purposes in reliance on advice from his tax professionals

and wealth advisors. This loss was not proximately caused by any of the alleged predicate acts or actions taken by the Moving Defendants.

With respect to his $1 million investment in Benaiah Digital, Mr. Kinnetz alleges he received a statement showing an account value of $956,124.53 on November 30, 2024. [*Id.* ¶ 96]. Mr. Kinnetz alleges that this statement was the last statement he received [*id.* ¶ 97], but Mr. Kinnetz does not specifically set forth what alleged predicate acts caused any injury to this account or the amount of damages that were allegedly caused by the predicate acts.

Yet, in his prayer for relief, Mr. Kinnetz prays for an award of treble damages in an amount not less than $16 million. Apparently, this requested damage award includes the $2 million tax loss Mr. Kinnetz voluntarily took for tax purposes (for losses caused by the market in 2022). Moreover, he appears to be requesting quadruple damages based upon the entire $4 million investment amount, although RICO specifies treble damages, not quadruple damages. *See, e.g., Faircloth v. Finesod*, 938 F.2d 513 (4th Cir. 1991) (stacking of damages not allowed).

Mr. Kinnetz also fails to plausibly allege how anyone, including Mr. Kinnetz, relied on any alleged fraudulent misrepresentations. *See Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 658 (2008) ("In most cases, the plaintiff will not be able to establish even but-for causation if no one relied on the misrepresentation."). In fact, the Amended Complaint contains allegations that show Mr. Kinnetz's lawyer also represented Mr. Wiener and the other Moving Defendants. Thus, Mr. Kinnetz's lawyer represented the persons Mr. Kinnetz now claims committed predicate acts and a pattern of racketeering proscribed by RICO. [Am. Compl. ¶107]

To plead wire or mail fraud, Mr. Kinnetz must plead he has been deceived. *See, e.g., Anza*, 547 U.S. at 458. Here, Mr. Kinnetz asserts: "On 15 March 2025, the Trust's attorney recused himself from Trust business after he disclosed to Mr. Kinnetz that he had been serving as counsel

15

for Wiener and the Benaiah Entities at the same time as he served as General Counsel for the Kinnetz Family Office and an attorney for the Kinnetz family and their entities." [Am. Compl. ¶ 107] Under these circumstances, Mr. Kinnetz could not have been deceived because everything his lawyer knew must be imputed to him when there is no allegation the lawyer was acting against the interests of Mr. Kinnetz.  Under agency law, "a principal is chargeable with the acts and knowledge of an agent as long as the agent in some respect served the principal" or "unless the agent 'totally abandoned' the principal's interests and 'acted entirely for his own or another's purpose.'" *In re Parmalat Securities Litigation*, 684 F.Supp 2d 453, 472 (S.D.N.Y 2010) (citing New York law).  Mr. Kinnetz cannot allege detrimental reliance on any alleged fraudulent misrepresentations because his lawyer was also representing the person allegedly committing the fraud and the lawyer's knowledge should be imputed to Mr. Kinnetz. *See Appletree Square I, L.P. v. W.R. Grace & Co.*, 29 F.3d 1283,1286 (8th Cir. 1994) (lack of detrimental reliance defeats standing to bring RICO claim based on predicate acts of mail fraud and wire fraud).

Mr. Kinnetz has not alleged how the alleged predicate acts (which must be pled with specificity) proximately caused Plaintiffs' injury. *See Marini v. Adamo*, 812 F. Supp. 2d 243, 267 (E.D.N.Y. 2011) (plaintiffs' alleged injuries "too attenuated" from the predicate acts to demonstrate proximate cause).  Thus, Mr. Kinnetz lacks standing to bring the RICO claim.

**B.  The Moving Defendants Requests the Court  Not to Grant Plaintiffs Anticipated Motion for Leave To File a Second Amended Complaint Because the Amendment Would Be Futile.**

As the Eighth Circuit has advised: "The classic 'good reasons' for rejecting an amendment are: 'undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of amendment . . . .'" *Popp Telcom v. American Sharecom, Inc.*, 210 F.3d 928, 943 (8th Cir 2000) (quoting *Thompson– El v. Jones*, 876 F.2d 66, 67 (8th Cir.1989). citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). *See*

16

*also Bell v. Allstate Life Ins. Co.*, 160 F.2d 452, 454 (8th Cir. 1998); *Yankton Sioux Tribe v. U.S. Army Corps of Engineers*, 497 F.Supp.2d 985, 987 (D.S.D. 2007) "Futility of amendment can, by itself, justify the denial of a motion for leave to amend."; *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). The test for futility of an amendment is whether a claim offered by way of amendment can survive a motion under Fed. R. Civ. P.12(b)(6). *Flandreau Santee Sioux Tribe v. United States*, 610 F.Supp.3d 1225, 1236 (D.S.D. 2022). Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Moving Defendants request the Court to not permit Mr. Kinnetz's anticipated motion for leave to amend the Amended Complaint to cure the many deficiencies contained in the Amended Complaint in his attempt to assert a RICO claim. Mr. Kinnetz's ability to bring a RICO claim is not curable. Simply put, the alleged fraud on investors and the fact the alleged predicate acts and pattern of racketeering activity are subject to the RICO Amendment Bar cannot be cured by artful pleading. In *Swartz v. KPMG LLP*, 470 F.3d 756, 781 (9th Cir. 2007), the Ninth Circuit explained: "Because the PSLRA bar would apply under any internally consistent set of facts, it would be futile to amend the RICO claim. Consequently, it was not error to dismiss this claim with prejudice."

Moreover, Mr. Kinnetz should not be allowed to correct his failure to plead sufficient facts to survive a motion to dismiss pursuant to Rule 12(b)(6) by changing his description of the alleged RICO enterprise or by attempting to change the admitted fact that market losses in 2022 were not caused by the RICO Defendants. Mr. Kinnetz should also not be allowed to change the fact he cannot show he detrimentally relied upon any of the alleged misrepresentations and thus lacks standing to bring the RICO claim.

In short, Mr. Kinnetz chose the facts he selected to support his claims when he filed both the Original Complaint and then the Amended Complaint. Because of his failure to plead "sufficient factual matter . . . 'to state a claim to relief that is plausible on its face'" in his first two attempts to establish the subject-matter jurisdiction of this Court, the Moving Defendants request the Court to not allow another chance to keep this case in federal court.

As set forth by this Court in *Flandreau Santee Sioux Tribe*, 610 F.Supp.3d at 1236:

"An amendment is futile 'if the proposed amended complaint does not establish a court's subject matter jurisdiction over the action' or fails to state a claim upon which relief may be granted. *See Walker v. Harmon*, Civ. No. 15-5037, 2016 WL 5376185, at *4 (D.S.D. Sept. 26, 2016) (citing *Am. Ins. Co. v. St. Jude Med., Inc.*, 597 F.Supp.2d 973, 979 (D. Minn. 2009)) (citing *Longie v. Spirit Lake Tribe*, 400 F.3d 586, 588 n3 (8th Cir. 2005)); *Cornelia I. Crowell GST Trust v. Possis Med., Inc.*, 519 F.3d 778, 782 (8th Cir. 2008). '[W]hen a court denies leave to amend on the ground of futility, it means that the court reached a legal conclusion that the amended complaint could not withstand a Rule 12 motion, Fed. R. Civ. P. 12.' *In re Senior Cottages of Am.*, LLC, 482 F.3d 997, 1001 (8th Cir. 2007). Leave to amend is futile if the 'proposed amended complaint does not cure the original complaint's deficiencies' with respect to subject matter jurisdiction. *Mortimer Off Shore Servs., Ltd. v. Fed. Rep. of Germany*, 615 F.3d 97, 99 (2d Cir. 2010)…."

Movants contend this is a case in which further amendment should not be allowed and requests dismissal to be with prejudice.

## V.  CONCLUSION

Moving Defendants respectfully request the Court to grant their motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(b)(1), and that the First Amended Complaint be dismissed with prejudice without leave to amend.

Dated this 1st day of December 2025.

        BENAIAH HOLDINGS, INC., BENAIAH CAPITAL, LLC, BENAIAH DIGITAL, LP, BENJAMIN PAUL WIENER, individually, CHRISTOPHER CHARLES HMIELEWSKI, individually, BENAIAH ENTERPRISES LLC, BENAIAH MANAGEMENT COMPANY, INC., RUNWAY FOUR10 LLC, TRIPLE POINT TRADING LLC AND RONALD J. GASCA, JR., individually, Defendants

By: */s/ Lisa M. Peters*
Lisa M. Peters (SD#5057)
Thomas H. Dahlk (*pro hac*)
Kutak Rock LLP
The Omaha Building
1650 Farnam Street
Omaha, NE  68102-2186
Telephone:  (402) 346-6000
Facsimile:  (402) 346-1168
lisa.peters@kutakrock.com
tom.dahlk@kutakrock.com

19

# CERTIFICATE OF SERVICE

     I hereby certify that on December 1, 2025, I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system, which sent notification of such filing to the following attorneys registered with the CM/ECF system:

Jeremy R. Jehangiri
U.S. Attorney's Office
Jeremy.jehangiri@usdoj.gov

*Attorney for the United States*

Adam D. Zenor
Joseph R. Casey
Zenor Law Firm, PLC
adam@zenorlaw.com
joe@zenorlaw.com

*Attorneys for Plaintiff Timothy A. Kinnetz Revocable Trust*

Dennis Aanenson c/o Davenport, Evans, Hurwitz & Smith
Attn: Mitchell A. Peterson
P.O. Box 1030
Sioux Falls, SD 57101-1030
mpeterson@dehs.com

Pepper Entertainment Inc c/o Davenport, Evans, Hurwitz & Smith
Attn: Mitchell A. Peterson
P.O. Box 1030
Sioux Falls, SD 57101-1030
mpeterson@dehs.com

Jeffrey W. Post
Steven R. Kinsella
Bredrikson & Byron, P.A.
jpost@fredlaw.com
skinsella@fredlaw.com

*Attorneys for Receiver Lighthouse Management Group, Inc.*

Alexandra E. Dugan
Bradley Arant Boult Cummings LLP
adugan@bradley.com

*Attorneys for Plaintiff Timothy A. Kinnetz Revocable Trust*

Stephen C. Landon
Andrew Sumner Hurd
Cadwell Sanford Deibert & Garry, LLP
slandon@cadlaw.com
ahurd@cadlaw.com

*Attorney for Cross-Claimant Joshua Dewitt*

A&B Business, Inc. c/o Davenport, Evans, Hurwitz & Smith
Attn: Mitchell A. Peterson
P.O. Box 1030
Sioux Falls, SD 57101-1030
mpeterson@dehs.com

Jered Johnson
c/o Davenport, Evans, Hurwitz & Smith
Attn: Mitchell A. Peterson
P.O. Box 1030
Sioux Falls, SD 57101-1030
mpeterson@dehs.com

Douglas R. Boettge
Stinson LLP

Edwin E. Evans
Evans Haigh & Arndt LLP
*Attorneys for Proposed Interveners*

 

/s/Lisa M. Peters
Lisa M. Peters

4912-3703-7691