UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| TIMOTHY A. KINNETZ, as Trustee of THE TIMOTHY A. KINNETZ REVOCABLE TRUST,<br><br>Plaintiff,<br><br>vs.<br><br>BENAIAH HOLDINGS, INC.; BENAIAH DIGITAL, LP; BENAIAH DIGITAL FIXED INCOME, LP; BENJAMIN PAUL WIENER, individually; JOSHUA DEWITT, individually; CHRISTOPHER CHARLES HMIELEWSKI, individually; BENAIAH CAPITAL, LLC; BENAIAH ENTERPRISES LLC; BENAIAH MANAGEMENT COMPANY, INC.; RUNWAY FOUR10 LLC; TRIPLE POINT TRADING LLC; RONALD GASCA JR.,<br><br>Defendants. | 4:25-CV-04134-CCT<br><br><br><br>**ORDER GRANTING MOTIONS TO INTERVENE AND ORDER ON MOTIONS FOR CLARIFICATION** |

Keith McKinzie, Kyle McKinzie, and Kris McKinzie (the McKinzies) request leave under Federal Rule of Civil Procedure 24 to intervene in the above-captioned matter for the limited purpose of seeking clarification regarding whether their Minnesota state court lawsuit against Runway Four10, LLC and Benjamin Wiener may proceed to judgment without violating this Court's receivership orders. Dockets 74. The McKinzies filed a separate motion for clarification regarding the same. Docket 70.

1

Dynamic Alpha, LLC also requests leave under Rule 24 to intervene for the limited purpose of seeking clarification that it may proceed to judgment in its South Dakota lawsuit against Wiener and whether it may enforce that judgment under South Dakota law without violating this Court's receivership orders. Docket 115. Dynamic Alpha similarly filed a separate motion for clarification. Docket 117.

Plaintiff Timothy A. Kinnetz as trustee of the Timothy A. Kinnetz Revocable Trust (Kinnetz) does not object to the motions to intervene by the McKinzies or Dynamic Alpha (hereinafter the "Intervenors" unless separate reference is necessary) and agrees that this Court has authority to clarify the meaning and scope of its orders. Docket 94 at 2; Docket 130 at 2. There being no objection, the Court grants the motions to intervene and considers the related motions for clarification. Because the Intervenors' arguments supporting clarification are substantially similar, the Court resolves both motions to clarify in this order.

## BACKGROUND

### I. The McKinzies' Minnesota lawsuit

The McKinzies brought suit against Wiener and Runway Four10 in Hennepin County District Court, Minnesota on August 8, 2025, seeking the return of $2 million transferred to Wiener personally in May 2025. Docket 71 at 2–3 (noting that the case is captioned as *McKinzie v. Wiener*, No. 27-CV-25-16304). They allege that Wiener is liable to them for this amount because he

2

made false representations that their $2 million would "purchase ownership interests in Runway Four10 and fund a loan[.]" *Id.* at 3.

Kinnetz learned of the McKinzies' lawsuit and, on October 11, 2025, directed them in a letter to "immediately cease and desist" their action against Wiener and related entities in light of this Court's August 15, 2025 receivership order. *Id.* (quoting Docket 76-2). Kinnetz further informed the McKinzies that if they proceed with their case, he will seek an order to show cause with this Court as to why they should not be held in contempt for violating the Court's order. *Id.*

## II.   Dynamic Alpha's South Dakota lawsuit

Dynamic Alpha instituted its suit against Wiener in Lincoln County, South Dakota on April 1, 2025. Docket 119 at 3 (noting that the case is captioned as *Dynamic Alpha, LLC v. Wiener*, No. 41CV25-000477). Dynamic Alpha contends that it entered into a contract with Wiener, whereby Wiener agreed to pay $250,000 in exchange for Dynamic Alpha transferring eleven Class A membership shares in Benaiah Capital, LLC to Wiener. *Id.* Dynamic Alpha alleges that it fully performed under the contract by transferring the shares on September 1, 2022, and Wiener has failed to fully perform because he has not remitted the remaining $60,000 due under the contract plus interest. *Id.*

Dynamic Alpha moved for summary judgment, and Wiener did not oppose or otherwise respond to the motion. *Id.* at 3–4. At a hearing in November 2025, Dynamic Alpha informed the state court of this pending

3

federal lawsuit against Wiener and his related entities and raised a concern about the implications of the Court's receivership orders. *Id.* at 4. Dynamic Alpha therefore requested the state court continue the hearing on its summary judgment motion pending this Court's clarification of the scope of its receivership orders. *Id.*

### III.   The motions for clarification and opposition thereto

The McKinzies seek confirmation that their lawsuit against Wiener and Runway Four10 does not violate the Court's receivership orders; that they may proceed to judgment in the Minnesota lawsuit without violating the receivership orders; and that they may execute on any judgment obtained in their Minnesota lawsuit as the Court so directs.[1] Docket 71 at 8.

Dynamic Alpha requests that this Court confirm that their South Dakota lawsuit against Wiener does not violate the Court's receivership orders; that it may proceed to summary judgment in that lawsuit; and that it may execute on any judgment obtained so long as it does not affect receivership property or as the Court would otherwise direct. Docket 119 at 8.

The Intervenors rely on *Riehle v. Margolies*, 279 U.S. 218 (1929), wherein the United States Supreme Court examined whether the appointment of a receiver in federal court to control the assets and distribution of the receivership estate means that the federal court has the exclusive authority to

---

[1] The McKinzies filed their motion for clarification while the Receiver's motion to expand the receivership, Docket 62, was pending. However, they acknowledged that the receivership, if expanded, would encompass Wiener personally and Runway Four10. Docket 71 at 6–7. They therefore seek clarification, as does Dynamic Alpha, as it relates to the scope of the expanded receivership order. *Id.*; Docket 119 at 2–3, 8.

4

determine both the existence of the claim and the amount of the indebtedness. Docket 71 at 4; Docket 119 at 4–6. In *Riehle,* the Court observed:

> [A]n order which results in the distribution of assets among creditors has ordinarily a twofold aspect. In so far as it directs distribution, and fixes the time and manner of distribution, it deals directly with the property. In so far as it determines, or recognizes a prior determination of, the existence and amount of the indebtedness of the defendant to the several creditors seeking to participate, it does not deal directly with any of the property.

279 U.S. at 224. The Court then explained that a proceeding to determine or recognize a prior determination of the existence and amount of the defendant's indebtedness to a creditor "is spoken of as the liquidation of a claim" and "is strictly a proceeding *in personam*." *Id.* It "does not purport to deal with the property." *Id.* Therefore, the Court held that while "no one can obtain any part of the assets, or enforce a right to specific property in the possession of a receiver, except upon application to the court which appointed him[,]" "[t]here is no inherent reason why the adjudication of the liability of the debtor in personam may not be had in some court other than that which has control of the res." *Id.*

Here, the Intervenors assert that, like the proceeding at issue in *Riehle,* their respective lawsuits, which were pending when this Court appointed the Receiver, seek only to fix personal liability and are thus in personam, leaving distribution or enforcement to this Court if necessary. Docket 71 at 7 (stating that "[t]hey seek no relief that would affect Receivership Property"); Docket 119 at 6 (claiming "there is virtually no risk that Receivership assets will be depleted simply by prosecuting Dynamic Alpha's state court claim to

5

judgment"). They therefore contend that under *Riehle*, this Court's stay language does not apply to bar them from prosecuting their respective lawsuits to judgment. Docket 100 at 4; Docket 119 at 6–7.

In response, Kinnetz first disputes that the McKinzies' Minnesota lawsuit was *pending* at the time the Court entered its original receivership order on August 15, 2025. Docket 94 at 3. Kinnetz relies on a September 3, 2025 filing date in the electronic court docket in Hennepin County, Minnesota, for the McKinzies' complaint against Wiener and Runway Four10. *Id.* at n.2. However, as the McKinzies note, a civil action is commenced under Minnesota law by service of the summons, and here, the summons was served on August 8, 2025. Docket 100 at 2. Therefore, the McKinzies' lawsuit against Wiener and Runway Four10 was pending at the time this Court entered its original receivership order.[2]

Kinnetz next asserts that regardless of the United States Supreme Court's holding in *Riehle*, enforcement of the stay is necessary here to protect the receivership estate. Docket 94 at 8–10; Docket 130 at 2–5. He also contends that enjoining the state court lawsuits is necessary in aid of this Court's in rem jurisdiction over the receivership property. *Id.* Kinnetz focuses particularly on how execution of any judgment obtained by the Intervenors

---

[2] In a footnote, Kinnetz suggests that the McKinzies' suit was not pending because he filed the motion for the appointment of a receiver on July 18, 2025, which was before the McKinzies commenced their Minnesota lawsuit against Wiener and Runway Four10 on August 8, 2025. Docket 94 at 8 n.4. However, Kinnetz does not direct this Court to law supporting that the date upon which one moves for the appointment of a receiver controls, rather than, as the Court in *Riehle* referenced, the date on which the receiver is appointed. *See* 279 U.S. at 223–24.

6

would deplete receivership assets.³ Docket 94 at 10, 11; Docket 130 at 4–5. Kinnetz therefore requests this Court clarify that its receivership orders bar the McKinzies and Dynamic Alpha from prosecuting their state court actions to judgment and from enforcing any judgment obtained. Docket 94 at 12; Docket 130 at 5.

## DISCUSSION

Both the original and expanded receivership orders provide that:

> All civil legal proceedings of any nature, including, but not limited to, arbitration proceedings, foreclosure actions, default proceedings, governmental actions including tax collection, or other actions of any nature involving: (a) the Receiver, in its capacity as Receiver; (b) any of the Receivership Property, wherever located; or (c) the Receivership Entities are stayed until further order of the Court. This stay applies to all parties in interest, whether public, private, federal or state.

Docket 95 ¶ 16; Docket 37 ¶ 15. These orders further provide that third parties, including creditors of the receivership entities, must obtain leave of the Court before "[c]ommencing, prosecuting, continuing or enforcing any suit or proceeding in law, equity, bankruptcy, or otherwise affecting the Receivership Entities or any part of the Receivership Property in any forum other than this Court[.]" Docket 95 ¶ 31(a); Docket 37 ¶ 30(a).

Issuing such blanket stays of litigation is permissible "in order to give the receiver 'a chance to do the important job of marshaling and untangling a

---

³ He also suggests that the receivership estate would incur costs and attorney fees by intervening in these state court cases involving victims of Wiener's investment scheme. Docket 94 at 10. However, there is nothing in the record evincing that the Receiver intends to intervene in the McKinzies' or Dynamic Alpha's respective state court lawsuits.

7

company's assets without being forced into court by every investor or claimant.'" *Ritchie Cap. Mgmt., L.L.C. v. Jeffries*, 653 F.3d 755, 762 (8th Cir. 2011) (citation omitted) (noting that "[a] federal court supervising an equity receivership has inherent equitable authority to issue a variety of ancillary relief to protect the receivership and, true enough, the scope of that relief is not limited to parties before the court"). However, a court's power to stay litigation is limited. To be sure, long ago the United States Supreme Court explained that although a receivership court has jurisdiction to determine "all questions incident to the preservation, collection and distribution of the assets[,]" once "the right of a plaintiff to prosecute his suit in" another court has "attached the right cannot be restrained by proceedings in any other court . . . unless the case is within some recognized exception[.]" *Riehle,* 279 U.S. at 223, 226 (observing that "[t]he rule that the appointment by a federal court of a receiver on a creditor's bill gives it no right to stay a suit then pending in a state court . . . has long been applied in some of the lower federal courts"); *see* 28 U.S.C. § 2283 ("A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.").

     Here, contrary to Kinnetz's assertion that the Intervenors' state court lawsuits threaten receivership assets and that an injunction is necessary in aid of this Court's jurisdiction, Docket 94 at 3–4, 6; Docket 130 at 2–5, the Intervenors specifically represent that they seek only to prosecute their

respective actions to judgment and will not proceed to enforce or execute on a judgment unless allowed to do so by this Court. Docket 71 at 7 (stating that they "seek only to proceed to judgment in Minnesota to liquidate their claim" and will not pursue enforcement of the judgment absent leave of this Court); Docket 100 at 4 (stating that they "explicitly agree to stay execution against the assets"); Docket 119 at 2, 4 (stating that it "does not seek to attach or exercise control over property of the Benaiah Entities" and it "commits to deferring any enforcement or execution on a judgment until this Court rules on any relevant matters, ensuring no interference with the administration of the Receivership"). These representations by the Intervenors are significant because when the matter at issue in the state court proceeding is the existence and amount of a claim, such proceeding does not directly deal with any of the receivership property and thus cannot be enjoined. *Riehle*, 279 U.S. at 224; *see Rogers v. Paving Dist. No. 1*, 84 F.2d 555, 558 (8th Cir. 1936) (concluding that the court could exercise its jurisdiction so long as it "did not interfere with the possession by the state court through its receiver of the res involved in the litigation"). Moreover, Kinnetz has not shown that a state court determination as to the existence and amount of the Intervenors' respective claims in an in personam lawsuit will in fact interfere with this Court's ability to control and dispose of receivership assets. *See Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 641–42 (1977) (concluding that the "necessary in aid of its jurisdiction" exception does not apply to enjoin state court in personam proceedings).

9

Accordingly, it is hereby

ORDERED that the motions to intervene, Dockets 74 and 115, are granted. It is further

ORDERED that the McKinzies' motion to clarify, Docket 70, is granted in part. The Court's August 15, 2025 and November 10, 2025 receivership orders do not preclude the McKinzies from proceeding to judgment in their in personam lawsuit against Wiener and Runway Four10 in Minnesota. However, these same receivership orders bar the McKinzies from enforcing or executing any judgment so obtained absent authorization by this Court. It is further

ORDERED that Dynamic Alpha's motion for clarification, Docket 117, is granted in part. The Court's August 15, 2025 and November 10, 2025 receivership orders do not preclude Dynamic Alpha from proceeding with obtaining summary judgment in its in personam lawsuit against Wiener in South Dakota. However, these same receivership orders bar Dynamic Alpha from enforcing or executing any judgment so obtained absent authorization by this Court. It is finally

ORDERED that the motions for clarification, Dockets 70 and 117, are denied in all other respects.

Dated February 25, 2026.

            BY THE COURT:

            /s/ *Camela C. Theeler*
            CAMELA C. THEELER
            UNITED STATES DISTRICT JUDGE