**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH DAKOTA**
**SOUTHERN DIVISION**

|  |  |
|---|---|
| TIMOTHY A. KINNETZ as trustee of THE TIMOTHY A. KINNETZ REVOCABLE TRUST, |  |
| Plaintiff, | Case No. 4:25-CV-04134-CCT |
| v. |  |
| BENAIAH HOLDINGS, INC., BENAIAH CAPITAL, LLC, BENAIAH DIGITAL, LP, BENAIAH DIGITAL FIXED INCOME, LP, BENJAMIN PAUL WIENER, individually, JOSHUA DEWITT, individually, and CHRISTOPHER CHARLES HMIELEWSKI, individually, BENAIAH ENTERPRISES LLC, BENAIAH MANAGEMENT COMPANY, INC., RUNWAY FOUR10 LLC, TRIPLE POINT TRADING LLC, and RONALD J. GASCA, JR., individually, |  |
| Defendants. |  |

**RECEIVER'S THIRD REPORT TO THE COURT**

February 27, 2026

# TABLE OF CONTENTS

SUMMARY ........................................................................................................................... 1

RECEIVERSHIP PROPERTY ............................................................................................. 2

    Benaiah Capital ................................................................................................................ 2

    Benaiah Enterprises ......................................................................................................... 3

    Benaiah Holdings ............................................................................................................. 4

    Ben Wiener ....................................................................................................................... 4

        2126 Jean Road (Lake Home) ................................................................................... 4

        5900 S Grand Lodge Place (Condo) ......................................................................... 5

        2701 W Dalston Circle (Wiener Residence) ............................................................ 6

        Vehicles ...................................................................................................................... 6

        Rolex Air King Watch ............................................................................................... 7

    Four16 Seventeen LLC .................................................................................................... 7

    Runway Four10, LLC ...................................................................................................... 8

    Other Receivership Property ............................................................................................ 9

        Sports Memorabilia Recovered from Benaiah Office ............................................... 9

        Receivership Property Held by Kutak Rock .............................................................. 9

        Coin Lion Tokens .................................................................................................... 10

        The Vaulted Collection ........................................................................................... 10

        Receivership Property in the Possession of Goosman Law ..................................... 11

WIENER ACTIONS TO IMPEDE RECEIVER ................................................................ 12

CASH AND DIGITAL ASSET TRANSACTIONS ........................................................... 13

    Cash Accounts ............................................................................................................... 13

    Crypto Exchange Accounts ............................................................................................ 14

        Transfers from Kraken to Other Exchanges ........................................................... 14

        Transfers from Kinnetz Account .............................................................................. 15

    Next Steps ...................................................................................................................... 16

CREDITOR AND CLAIMS PROCESS ............................................................................ 16

RECEIVER FINANCIAL REPORTING ........................................................................... 17

NOTICE OF OBJECTIONS .............................................................................................. 18

i

## SUMMARY

On August 15, 2025, the South Dakota District of the United States District Court issued an Order Granting Timothy A. Kinnetz Revocable Trust's Motion To Appoint A Receiver ("Receivership Order") appointing Lighthouse Management Group, Inc. (the "Receiver" or "Lighthouse") as a receiver under Federal Rule of Civil Procedure 66 and other applicable law over Benaiah Capital, LLC ("Benaiah Capital") and Benaiah Digital, LP ("Benaiah Digital").

On November 10, 2025, the Court issued an order expanding the Receivership ("Expanded Receivership Order") to include Benjamin Paul Wiener ("Wiener") personally and several other Benaiah affiliated entities. References to "Benaiah Affiliates" in this report means all entities specifically identified in the Expanded Receivership Order and any entity owned and/or controlled by any entity specifically identified in the Expanded Receivership Order.

The Receiver has located approximately $5.0 million of Receivership Property, most of which is encumbered by mortgages or other secured interests. No material amount of cash or digital assets have been located. Cash collections by the Receiver total $103,717. Cash disbursements for professional fees and other expenses total $386,653. The Plaintiff has advanced $300,000 to the Receiver to fund expenses until additional Receiver Property can be monetized.

The Receiver has discovered irrefutable evidence that Wiener has concealed and is selling Receivership Property rather than turn it over to the Receiver as required by the Expanded Receivership Order. Wiener has also deleted thousands of electronic records on the Benaiahco SharePoint site, remotely erased his personal cell phone seized by the Receiver, and has acted to impede the Receiver's tracing of cash and digital asset transfers by blocking access to email accounts, bank accounts, and exchange accounts. Wiener has also refused to meet with the Receiver and law enforcement to identify cold storage wallet private keys that Wiener alleges are contained on flash drives held by law enforcement. A hearing is scheduled March 3, 2026, on a motion filed by the Receiver seeking the Court to compel Wiener's cooperation.

The Receiver has found that approximately $12.0 million was transferred from Benaiah Affiliate bank accounts to several Kraken accounts and then subsequently transferred to accounts at KuCoin, FalconX, MEXC and WEEX. The Receiver continues to trace these digital assets. The Receiver has no assessment at this time regarding what value, if any, is recoverable.

1

## RECEIVERSHIP PROPERTY

The Receiver's primary focus since its appointment has been to locate and take control of Receivership Property held by Wiener and other Benaiah Affiliates. **Exhibit A** is a schedule of Benaiah Affiliates that have been identified by the Receiver to date.

Table 1 below is a schedule of Receivership Property that has been located by the Receiver.

**Table 1 Schedule of Receivership Property**

| Entity | Asset | Description | Approximate Market Value |
|---|---|---|---|
| Benaiah Capital | CSV Life Insurance | Josh DeWitt life insurance policy | $6,447 |
| Benaiah Capital | Lion Token | Digital asset | N/A |
| Benaiah Enterprises | 105 N Krohn Place | 13,826 sq. ft. Office Building on 1.63 acres | $1,536,000 |
| Benaiah Enterprises | 100 N Maple Avenue | Office building parking lot on 0.72 acres | (included above) |
| Benaiah Holdings | CSV Life Insurance | Chris Hmielewski life insurance policy | $46,018 |
| Ben Wiener | 2126 Jean Road | Lake home | $499,900 |
| Ben Wiener | 5900 S Grand Lodge | Condo | $375,000 |
| Ben Wiener | 2701 Dahlstrom | Wiener residence | $2,059,000 |
| Ben Wiener | 2019 Tesla Model X | VIN 5YJXCDE43KF187151 | $25,000 |
| Ben Wiener | 2024 Tesla Cyber Truck | VIN 7G2CEHEE3RA035738 | $75,000 |
| Ben Wiener | 2023 Lincoln Navigator | VIN 5LMJJ3TG0PEL14457 | $62,500 |
| Ben Wiener | Rolex Air King Watch | Serial # 126900/492J6027 | $6,200 |
| Four16 Seventeen | Artessa Membership | 1.579% membership interest | $300,000 |
| Undetermined | Digital Assets | Approx. 50 crypto exchange accounts | N/A |
| Undetermined | Sports Memorabilia | Trading cards, autographed jerseys, shoes, and other sports related items | N/A |
| **Total** | | | **$4,991,065** |

### Benaiah Capital

As described in the Receiver's report dated September 29, 2025, Receivership Property held by Benaiah Capital includes general partner membership interests in Benaiah Digital and Benaiah Fixed. The Receiver continues to investigate the transactions that occurred in the various crypto exchange accounts held by Benaiah Digital and Benaiah Fixed to determine if any value can be recovered.

Benaiah Capital is the beneficiary of life insurance policy issued by Lincoln Financial Group ("Lincoln") covering Josh DeWitt. On October 29, 2025, the Receiver submitted a Surrender Request to Lincoln seeking payout of the $6,447 cash surrender value of the Josh DeWitt policy. Payment was received on February 25, 2026.

2

**Benaiah Enterprises**

Benaiah Enterprises owns a 13,826 sq. ft. office building located in Sioux Falls. The building is situated on a 1.63 acre parcel (105 N Krohn Place) and the building's parking lot is on an adjoining 0.72 acre parcel (100 N Maple Avenue). The property was appraised at $1,536,000 on November 13, 2025. Wiener holds a 52% membership interest in Benaiah Enterprises. The remaining 48% membership interest is held by Bruce Schwan, Wiener's father-in-law.

Peoples Bank asserts a first mortgage on 105 N Krohn securing a loan to Benaiah Enterprises with an outstanding balance of approximately $605,000. Peoples Bank also held a mortgage on 100 N Maple Avenue, but it was released in 2021.

On April 10, 2025, Wiener obtained a personal $1.0 million line of credit from American Bank & Trust ("ABT"). Although Benaiah Enterprises received no benefit from the loan, Wiener executed a corporate guarantee on behalf of Benaiah Enterprises and mortgages on both 105 N Krohn and 100 N Maple in favor of ABT to secure his personal loan.

ABT also required Bruce Schwan to execute an "Authorization" confirming that Wiener had corporate authority to cause Benaiah Enterprises to provide the corporate guarantee and mortgages required by ABT to secure Wiener's personal loan. Wiener provided ABT with an Authorization purportedly executed by Bruce Schwan via Docusign on April 10, 2025.

Bruce Schwan represents that he was unaware of the corporate guarantee and mortgages that Benaiah Enterprises provided to ABT and denies executing the Authorization. The Receiver has found evidence supporting Schwan's representations, including evidence that Wiener created a fake email account on yahoo.com and used this account to Docusign the Authorization on Bruce Schwan's behalf.

The Receiver continues to evaluate the asserted mortgages of Peoples Bank and ABT. Bruce Schwan has expressed an interest in purchasing Wiener's 52% membership interest in Benaiah Enterprises but is unwilling to do so if the guarantee and mortgages in favor of ABT are valid. The Receiver is in discussions with Bruce Schwan, Peoples Bank, and ABT but no mutually acceptable resolution has been reached. Absent a resolution between the parties, the most viable alternative to resolve the competing claims held by these parties is to sell the property and hold the proceeds pending determination by the Court of how the proceeds should be disbursed.

Prior to the Receiver's appointment, a tenant occupying the second floor of the building provided notice that it would be vacating its space when its lease expired in January 2026. The building is currently unoccupied. Before vacating, the former tenant purchased from the Receiver $1,225 of breakroom furniture located on the premises.

## Benaiah Holdings

Benaiah Holdings is the beneficiary of a life insurance policy issued by Lincoln covering Chris Hmielewski. In October 2025, the Receiver learned that Wiener had submitted a Surrender Request to Lincoln on behalf of Benaiah Holdings and had received a check in the amount of $46,018 for the cash surrender value of this policy. Wiener endorsed the check over to Kutak Rock as a retainer for legal services. On January 16, 2026, Kutak Rock turned over the $46,018 to the Receiver.

To date, no other assets of Benaiah Holdings have been located.

## Ben Wiener

### *2126 Jean Road (Lake Home)*

Wiener and Leah Wiener hold joint title to a 1,692 sq. ft. lake home located on a 0.46 acre lot in Balaton, MN. The property is unoccupied.

Valon Mortgage holds a first mortgage on the property securing a loan with an outstanding balance of approximately $320,000. Bruce Schwan holds a second mortgage on the property securing a loan obligation of approximately $400,000.

The Receiver has engaged Marshall Area Homes to sell the property with a listing price of $499,900. It is expected that proceeds from the sale, net of any expenses incurred by the Receiver, will be sufficient to satisfy Valon's mortgage in full and that any remaining proceeds will be distributed to Bruce Schwan in partial satisfaction of his second mortgage encumbering the property.

The Receiver has requested that Valon Mortgage force place insurance to ensure coverage during the sales process after discovering that property insurance coverage on the property was cancelled in August 2025 due to nonpayment.

4

*5900 S Grand Lodge Place (Condo)*

Wiener is the titleholder of a three-bedroom condo in Sioux Falls with an estimated market value of approximately $375,000. The condo is currently occupied by Wiener's parents, Darrel and Karen Wiener.

Peoples Bank holds a first mortgage on the property securing a loan with an outstanding balance of approximately $152,000. The property is also encumbered by judgment liens recorded against the property totaling approximately $10.3 million held by four creditors.

**Table 2 5900 S Grand Lodge Place Judgment Creditors as of November 14, 2025**

| Date | Judgment Creditor | Amount |
|------|-------------------|--------|
| 07/21/25 | Syverson, Darin Troy | $316,424 |
| 08/04/25 | Taunton Ventures | $9,382,205 |
| 08/06/25 | Accounts Management Inc. | $1,750 |
| 09/29/25 | Holly & Michael Johnson | $585,000 |
| **Total** | | **$10,285,379** |

Darrel and Karen Wiener provided the Receiver with a lease for the premises executed on August 30, 2018. On January 16, 2026, the Receiver sent Darrel and Karen Wiener a notice of default and termination of the lease due to nonpayment of rent. Darrel and Karen Wiener dispute that the lease is in default, claiming that their lease payments are offset by payments due to them by Wiener resulting from his purchase of their insurance agency in 2021.

The Receiver offered to sell the condo to Darrel and Karen Wiener for its $375,000 market value, but they declined. The Receiver has tentatively reached an agreement with Darrel and Karen Wiener under which the Receiver will agree to waive any claims related to the lease in exchange for Darrel and Karen agreeing to voluntarily vacate the premises on or before April 30, 2026.

The Receiver's intent is to list the property for sale after Darrel and Karen vacate the premises. It is expected that proceeds from the sale, net of any expenses incurred by the Receiver, will be sufficient to satisfy Peoples Bank's mortgage in full.

*2701 W Dalston Circle (Wiener Residence)*

Wiener and Leah Wiener hold joint title to a five-bedroom, 3,280 sq. ft. home located on a 1.13 acre lot in Sioux Falls. In 2024 and 2025, Wiener spent over $300,000 to construct an elaborate pool and patio/entertainment area in the back yard. The project was started but remains uncompleted. An appraisal dated January 29, 2025, estimates that the "as-is" market value of the home without the completion of the pool/patio/entertainment area is $2,059,000.

Peoples Bank holds a first mortgage on the property securing a loan with an outstanding balance of approximately $875,000. ABT holds a second mortgage on the property securing the personal $1.0 million line of credit it provided to Wiener. The property is also encumbered by the same judgment liens totaling approximately $10.3 million held by the four creditors listed in Table 2 that have recorded judgment liens against the condo.

Property insurance for the property was cancelled prior to the Receiver's appointment due to, among other things, the lack of a fence surrounding the pool. The Receiver's understanding is that Peoples Bank is in the process of foreclosing on the property and has force placed property insurance coverage.

*Vehicles*

Wiener is the titleholder of three vehicles located by the Receiver.

**Table 3 Wiener Titled Vehicles**

| Vehicle | Approximate Market Value | Secured Interest |
|---|---|---|
| 2019 Tesla Model X | $20,000-$30,000 | $4,000 |
| 2024 Tesla Cyber Truck | $65,000-$85,000 | $107,000 |
| 2023 Lincoln Navigator | $50,000-$65,000 | $53,000 |
| Total | $135,000-$180,000 | $164,000 |

The 2019 Tesla Model X has an estimated market value of $20,000 to $30,000. The vehicle is encumbered by a loan from Alliant Credit Union ("Alliant") with an outstanding balance of approximately $4,000. On or about December 3, 2025, Alliant repossessed the vehicle and is in process of selling it. Alliant has agreed to turn over to the Receiver the proceeds from the sale, net of full payment of Alliant's loan and all repossession and sales expenses. The Receiver expects to the receive the net proceeds within the next 4-6 weeks.

6

The 2024 Tesla Cyber Truck is registered to Wiener and LEW Hodlings LLC.[1] The estimated market value of the vehicle is between $65,000 and $85,000. It is encumbered by a loan from Wells Fargo with an outstanding balance of approximately $107,000 as of July 2025. Prior to the Receiver's appointment, insurance coverage on the vehicle was cancelled due to nonpayment. The Receiver allowed Wiener to retain possession of the vehicle after receiving proof of replacement coverage. The Receiver's expectation is that Wells Fargo will repossess the vehicle in the near future, if it has not already done so.

The 2023 Lincoln Navigator has an estimated market value of $50,000 to $65,000. It is encumbered by a loan from Bank of America with an outstanding balance of approximately $53,000 as of September 2025. Wiener has represented to the Receiver that the vehicle was repossessed in December 2025.

*Rolex Air King Watch*

On November 11, 2025, Ben Wiener represented to the Receiver that he no longer owned a Rolex watch. The Receiver later discovered that on January 12, 2026, Wiener entered into an agreement with Gunderson's Jewelers, a Rolex dealer in Sioux Falls, to sell a Rolex Air King watch for $6,200. After being contacted by the Receiver, Gunderson's Jewelers agreed to pay the $6,200 sale proceeds to the Receiver rather than Wiener. The Receiver expects to receive payment within the next week.

## Four16 Seventeen LLC

Four16 Seventeen LLC is a Delaware LLC formed by Wiener on or about October 3, 2024. Wiener is Four16 Seventeen's sole member.

Four16 Seventeen's assets identified by the Receiver are:

- 60% membership interest in Runway Four10, LLC; and
- 1.6% membership interest in Artessa, LLC.

---

[1] Although "Hodlings" appears to be a deliberate misspelling of "Holdings," the actual business name in the Articles of Organization filed with the South Dakota Secretary of State is "LEW Hodlings, LLC." LEW Hodlings, LLC is also the name in the companies Operating Agreement executed by Wiener and Leah Wiener on June 4, 2021.

Artessa is a single purpose entity formed on or about March 19, 2025, to develop a mixed use residential and commercial real estate development in Sioux Falls. On May 28, 2025, Wiener transferred $300,000 to Artessa from his personal account at People Bank to pay for Four16 Seventeen's 1.6% membership interest. The source of the $300,000 is transfers into Wiener's personal account from Benaiah Affiliates.

Another Artessa member, the Joseph and Shawn Costello Living Trust, has agreed to purchase Four16 Seventeen's 1.6% membership interest for $300,000. The Receiver expects to complete this transaction within the next week.

**Runway Four10, LLC**

An executed operating agreement found in Benaiah's corporate records identifies Runway Four10 as a South Dakota LLC formed on January 1, 2025, with Wiener holding a 20% membership interest, LEW Hodlings a 20% membership interest, and Four16 Seventeen a 60% membership interest.

Between November 8, 2024, and July 16, 2025, Runway Four10 received 19 transfers totaling over $3.7 million from investors. Of this amount, $3.1 million was subsequently transferred to Wiener's personal accounts, often immediately after being received by Runway Four10.

The remaining funds were transferred to crypto exchange accounts or used to fund operating expenses of other Benaiah Affiliates. No cash or other assets directly attributable to Runway Four10 have been located.

On or about June 10, 2025, Wiener engaged MWE Corporate Services as a registered agent to file Certificates of Formation for Runway Four10 LLC, TriplePoint Trading LLC, Echo Execution LLC, and 4Sixteen LLC in Delaware. No operating agreements identifying any of these entities as a Delaware LLC have been found.

Unexecuted Operating Agreements found on Benaiah's corporate records identify 4Sixteen LLC, Echo Execution LLC, and Triple Point Trading LLC as South Dakota LLCs formed June 10, 2025, with Runway Four10 holding a 99.5% membership interest and Wiener a 0.5% membership interest. The Receiver has not identified any assets held by 4Sixteen LLC, Echo Execution LLC or Triple Point Trading LLC.

8

Although Triple Point Trading LLC's unexecuted operating agreement identifies its members as Runway Four10 and Wiener, a Limited Liability Company Resolutions dated June 18, 2025, provided to BMO Bank to open a checking account identifies Wiener and Christopher Hmielewski ("Hmielewski") as members of Triple Point Trading LLC. In response to an inquiry from the Receiver, Hmielewski stated that he does not have an ownership interest in Triple Point Trading, LLC.

## Other Receivership Property

### *Sports Memorabilia Recovered from Benaiah Office*

The Receiver took possession of a significant quantity of autographed sports jerseys, photographs, baseballs, helmets, basketball shoes, trading cards and other sports memorabilia found in the Benaiah office at 105 N Krohn Place. On December 17, 2025, a portion of these items were sold in an online auction conducted by Grafe Auctioneers generating gross sale proceeds of $21,154.

The remaining items removed from the Benaiah office consist mostly of trading cards, including both individual cards and packs. An online auction of these remaining items is scheduled to occur on March 17, 2026.

### *Receivership Property Held by Kutak Rock*

In addition to the $46,018 check for the cash surrender value of the Benaiah Holdings life insurance policy on Hmielewski, Wiener transferred $25,000 to Kutak Rock and several items of sports memorabilia including:

- Autographed Shohei Ohtani Jersey purchased by Wiener on February 7, 2025, for $53,100 with funds obtained from Runway Four10;
- Barry Bonds game worn uniform; and
- Kobe Bryant autographed jersey.

The source of the $25,000 payment to Kutak Rock was a transfer from a Kraken account under the username bpwiener@gmail.com.

The Receiver's position is that the cash and sports memorabilia transferred to Kutak Rock is Receivership Property. In December 2025, the Receiver contacted Kutak Rock and demanded

9

turnover to the Receiver of the cash and sports memorabilia in their possession. In January 2026, Kutak Rock wired the $71,018 and shipped the sports memorabilia in their possession to the Receiver.

The Receiver received the Shohei Ohtani Jersey but a second package containing the remaining sports memorabilia was lost in transit. FedEx tracking reports the second package arriving in Memphis and then disappearing. The Receiver had insured the package for $50,000 and submitted a claim. FedEx's response to the Receiver's claim is that the coverage for sports memorabilia is limited to $1,500. The Receiver has disputed FedEx's adjudication. No resolution has been reached.

The Receiver has engaged Heritage, a national auctioneer specializing in sports memorabilia, to auction the Shohei Ohtani jersey with a guide value of $50,000. The auction is in process and will close on March 1, 2026.

### Coin Lion Tokens

Wiener and other Benaiah Affiliates held seven accounts on the Coin Lion exchange. Activity on the Coin Lion earns Lion Tokens. A Lion Token is a reward-based utility currency similar to airline reward points only used on the Coin Lion platform.

Account statements provided by Coin Lion report approximately $136,000 of Lion Tokens. In reality, Lion Tokens are of limited value due to lack of market participants, low trade volume, and illiquidity outside of the Coin Lion platform. The Receiver is still evaluating what value, if any, may be recovered from the Lion Tokens.

### The Vaulted Collection

On June 23, 2025, Wiener purchased the domain name thevaultedcollections.com. The apparent plan was to create an online store called The Vaulted Collection ("TVC") to sell trading cards and sports memorabilia. The domain name thevaultedcollections.com appears to be an attempt to mimic an existing online store https://vaultedcollection.com/ that also sells sports memorabilia.

After the Receiver's appointment, it was discovered that Wiener and his brother, Sam Wiener, were utilizing The Vaulted Collection name to sell trading cards on platforms such as Whatnot.

10

Payments are being processed through accounts under Wiener's control on apps such as PayPal, Venmo, XT, and Zypto.

Wiener claims that the trading cards being sold were purchased on his father's credit card and that none of the assets sold were Receivership Property. Contrary to Wiener's assertions, the Receiver has identified trading cards listed for sale that match cards included on inventory lists, images, and other documentation found on the Benaiahco SharePoint site. Wiener has not responded to requests to provide records proving that the assets he and his brother are selling are not Receivership Property.

The evidence available to the Receiver strongly suggests that Wiener is utilizing The Vaulted Collection and other channels to sell Receivership Property. The Receiver is also concerned about the possibility that proceeds from the sale of Receivership Property are being diverted to Sam Wiener. Despite repeated requests, Wiener has failed to respond to the Receiver's demand for information regarding these sales. Wiener has also ignored the Receiver's instructions to stop selling Receivership Property.

### *Receivership Property in the Possession of Goosmann Law*

Goosmann Law provided legal services to Benaiah Capital and other Benaiah Affiliates. On December 19, 2025, the Receiver contacted Goosmann Law requesting that it immediately turn over all records, communications, and work product related to the entities subject to the Expanded Receivership Order. Goosmann Law refused to do so, citing concerns of attorney-client privilege and requesting a subpoena.

The Receiver issued a subpoena to Goosmann Law on January 23, 2026. After issuing the subpoena, the Receiver's counsel engaged in discussions with Goosmann Law's counsel, but could not reach a resolution. As of the date of this Report, the Receiver has not received the files from Goosmann Law. The Receiver's position is that attorney-client privilege is held by the Receiver. The Receiver provided Goosmann with several legal citations supporting this position. Absent a resolution within the next several days, the Receiver's intent is to file a motion seeking an order from the Court to compel Goosmann to comply with the Receiver's demand to turn over the Receivership Property in its possession.

## WIENER ACTIONS TO IMPEDE RECEIVER

Wiener has actively engaged in, and continues to engage in, efforts to conceal, sell, and divert
Receivership Property from the Receiver's control. Wiener has also taken actions to impede the
work being done by the Receiver and Cyber Investigations Group, LLC ("CIG") to trace cash
and exchange account activity. Actions taken by Wiener include:

- The concealment and subsequent sale of sports memorabilia, jewelry, and other
  Receivership Property;

- Transfers of cash through various apps and exchanges including PayPal, Robinhood,
  Venmo, and Zypto, including over $35,000 received and withdrawn from an XT account
  since November 12, 2025;

- Refusal to meet with the Receiver and law enforcement to identify cold storage wallet
  private keys that Wiener alleges are contained on flash drives held by law enforcement;

- Reporting to Apple that his personal cell phone seized by the Receiver had been stolen,
  remotely erasing the email, text, and other records on the cell phone, and then
  transferring the phone number to another device to prevent the Receiver from utilizing
  the phone and authenticator apps on it;

- Wiener's refusal to provide login credentials to certain exchange accounts the Receiver
  has been unable to access;

- Logging into and changing the passwords and MFA to email accounts, bank accounts,
  and crypto exchange accounts to cut off the Receiver's access including changing the
  password for the bpwiener@gmail.com email account as recently as February 20, 2026;
  and

- Deleting thousands of electronic records contained on the Benaiahco SharePoint site.

Details regarding Wiener's actions have been described in submittals to the Court including:

- Affidavit of Patrick T. Finn in Support of Expedited Motion to Compel: (A) Turnover of
  Receivership Property and Login Credentials; and (B) Cooperation with the Receiver
  filed December 11, 2025 (Docket No.113);

- Supplemental Affidavit of Patrick T. Finn in Support of Expedited Motion to Compel:
  (A) Turnover of Receivership Property and Login Credentials; and (B) Cooperation with
  the Receiver filed December 31, 2025 (Docket No.129); and

- Second Supplemental Affidavit of Patrick T. Finn in Support of Expedited Motion to
  Compel: (A) Turnover of Receivership Property and Login Credentials; and (B)
  Cooperation with the Receiver filed February 11, 2026 (Docket No.151).

On December 11, 2025, the Receiver filed an expedited motion seeking the Court to compel Wiener to comply with the receivership orders already issued and to cooperate with the Receiver's efforts to locate Receivership Property. Immediately prior to a hearing scheduled on January 6, 2026, Wiener's attorney filed notice seeking to withdraw from representing Wiener. At the hearing, the Court granted Wiener's attorney's request and provided Wiener ten days to retain new counsel.

After Wiener retained new counsel, the Receiver attempted to reach a resolution that would result in Wiener cooperating with the Receiver. These efforts proved unsuccessful and a hearing on the Receiver's motion to compel has been rescheduled for March 3, 2026.

On February 16, 2026, the Receiver sent a letter (*See* **Exhibit B**) to Wiener's new attorney after discovering, among other things, that Wiener had accessed the Benaiahco SharePoint site, utilizing a computer that he has refused to turn over to the Receiver, and deleted thousands of electronic records, including images of trading cards and sports memorabilia. As noted earlier in this report, the deleted images of trading cards and sports memorabilia appear directly related to assets being sold via The Vaulted Collection and other sales channels.

On February 17, 2026, Wiener's new attorney filed notice seeking to withdraw from representing Wiener.

## CASH AND DIGITAL ASSET TRANSACTIONS

### Cash Accounts

The Receiver has identified approximately twenty-three bank accounts held by Wiener and other Benaiah Affiliates. The Receiver has obtained bank records for most, but not all, of these accounts. Subpoenas have been issued to banks to obtain additional bank records and documentation of cash transactions needed to complete the Receiver's analysis.

To date, the Receiver has identified transfers from investors to Wiener and other Benaiah Affiliates totaling $32.5 million. Approximately $16 million of the funds received from investors were either transferred or otherwise paid back to investors.

In the Receiver's last report, numerous examples were cited of commingling cash, blurring corporate identities, and a blatant disregard of fiduciary duties. Numerous additional examples have been found of a Benaiah Affiliate paying the expenses of another Benaiah Affiliate or receiving cash proceeds belonging to another Benaiah Affiliate. The Receiver has also identified numerous additional transfers from Benaiah Affiliates to Wiener's personal accounts. Examples include the reference earlier in this report of 19 transfers totaling $3.7 million received from Runway Four10 investors of which over $3.1 million was subsequently transferred to Wiener's personal accounts.

**Crypto Exchange Accounts**

In December 2025, the Receiver engaged CIG to perform a forensic analysis of transactions that occurred in the approximately fifty crypto exchange accounts that have been located by the Receiver. The primary focus of CIG's investigation is to determine:

1. What digital assets, if any, are traceable and recoverable; and

2. The value that was created or lost due to trading activity.

**Exhibit C** is a report of CIG's initial findings. While CIG's investigation shed light on the movement of investor funds, CIG has not yet located any exchange accounts or self-custodied addresses with significant assets for recovery. CIG did, however, identify more than $500,000 in assets that were transferred to the FTX cryptocurrency exchange, which is in bankruptcy with significant assets available for distribution to depositors. The Receiver intends to promptly file a claim for recovery of these assets but is aware that the claim may be time barred.

*Transfers from Kraken to Other Exchanges*

The Receiver has identified 141 transfers totaling approximately $13.0 million from Benaiah Affiliates' bank accounts to Kraken accounts. Of this amount, approximately $5.9 million was transferred to a Benaiah Digital Kraken account and $6.7 million to a ben.wiener@benaiahcogo Kraken account. CIG has found that approximately $12.0 million was subsequently transferred to accounts at KuCoin, FalconX, MEXC, and WEEX and approximately $560,000 was lost due to trading activity.

**Table 4 Transfers from Kraken to Other Exchange Accounts 2021-2025**

| Destination (high-level) | Digital Account | Wiener Account | Total USD equiv. |
|---|---|---|---|
| MEXC | $5,486,678 | $4,393,356 | $9,880,034 |
| KuCoin | $408,870 | $437,511 | $846,381 |
| FalconX | | $749,885 | $749,885 |
| WEEX | | $533,739 | $533,739 |
| Trading losses | $26,679 | $560,131 | $586,810 |
| **Total** | **$5,922,227** | **$6,674,622** | **$12,596,849** |

MEXC, OKX, and other exchanges utilized by Wiener are offshore exchanges that operate outside the U.S. regulatory framework applicable to exchanges lawfully serving U.S. customers. These exchanges restrict access to persons in the United States and employ IP-based geolocation controls to block access. To utilize these exchanges, Wiener used a VPN to spoof his location and make it appear that he was accessing the exchange from outside the United States.

CIG identified three MEXC deposit addresses as aggregation points: BPDEFI, ben.wiener@benaiahco.com, and jimmyriches@yahoo.com. Approximately $4.6 million of the assets transferred to MEXC went to these three accounts. Several MEXC recipient addresses received an additional $4.5 million from the Kraken accounts and remain unassociated with any identified MEXC accounts.

CIG also found in their analysis that $1.1 million of the assets transferred from Kraken to MEXC were subsequently transferred back to a Kraken account held by Wiener personally. CIG and the Receiver have traced transfers totaling $2.1 million from this same Kraken account to Wiener's personal checking account at Peoples Bank.

*Transfers from Kinnetz Account*

Timothy Kinnetz transferred $3.0 million to his personal Kraken account. Wiener was engaged by Kinnetz to manage this investment. CIG's analysis shows that almost $2.4 million held in the accounts was lost due to trading activity. Wiener transferred approximately $514,000 directly from the account to an OKX account believed to be controlled by Wiener. CIG traced an additional $32,000 from Kinnetz's Kraken account, through intermediate addresses, into another OKX deposit address.

15

**Table 5 Transfers from Timothy Kinnetz Krakan Account 2022 to 2025**

| Destination (high-level) | USD equiv. |
|---|---|
| Trading losses | $2,119,322 |
| OKX | $513,869 |
| **Total** | **$2,633,191** |

## Next Steps

Next steps include (1) completing the forensic analysis of cash transactions once the remaining account statements and bank records are received and, (2) tracing what happened to the $12.0 million transferred from Kraken to KuCoin, FalconX, MEXC, OKX, WEEX, and other exchanges. The Receiver expects it will be several months before this process is completed.

Where possible, the Receiver has subpoenaed exchanges to obtain transaction records and KYC documentation to identify recipient wallet owners. Based on CIG's findings, the Receiver is in the process of sending supplemental subpoenas for additional KYC information to identify the ownership of recipient wallets. One challenge is that MEXC and many other exchanges utilized by Wiener are based outside of the United States and unresponsive to subpoenas or similar information requests.

The Receiver has been able to gain online access to some of the exchange accounts utilized by Wiener and to download transaction details. This has been useful in identifying transaction activity but does not provide information regarding the ownership of the recipient wallet IDs to which assets were transferred. In the case of MEXC, the transaction activity available online only goes back eighteen months from the date the account data is exported. MEXC contends that they do not retain older information so it may not be possible to complete a full tracing analysis of what happened to the funds transferred to MEXC.

## CREDITOR AND CLAIMS PROCESS

After the Court issued the Expanded Receivership Order on November 10, 2025, the Receiver provided notice to approximately sixty additional possible creditors.

Within the next 1-2 weeks, the Receiver will send Proof of Claim forms requesting detailed information regarding all cash and digital assets transactions between creditors and any Benaiah

Affiliate. Whereas it is still uncertain what funds, if any, will be available to satisfy creditor claims, the Proof of Claim responses will be useful in identifying recipient wallet IDs in instances where transfers from exchange accounts were redemptions or other payments to investors.

## RECEIVER FINANCIAL REPORTING

Table 6 is a Sources and Uses of Cash Statement summarizing all cash receipts and disbursements by the Receiver since its appointment.

**Table 6 Receiver Sources and Uses of Cash August 15, 2025 to February 27, 2026**

| Sources and Uses of Cash | Amount |
|---|---|
| **Cash In** | |
| Starting Cash | $120 |
| Rental Income | $10,200 |
| Sale of Assets | $22,379 |
| Cash Value Life Insurance | $46,018 |
| Other Cash Receipts | $25,000 |
| **Cash In Total** | **$103,717** |
| **Cash Out** | |
| General & Admin | ($8,199) |
| Liquidation Expense | ($6,538) |
| Legal & Professional Fees | ($79,231) |
| Receiver Fees | ($292,684) |
| **Cash Out Total** | **($386,653)** |
| **Advance/Distribution** | **$300,000** |
| **Grand Total** | **$17,064** |

The Receiver has collected cash receipts totaling $103,717 consisting of $10,200 of rental income, proceeds from asset sales totaling $22,379, and $71,018 turnover to the Receiver from Kutak Rock. In addition, the Plaintiff has advanced $300,000 to pay fees and expenses.

Cash disbursements include $8,199 of utilities and other expenses required to preserve and protect Receivership Property and $6,538 of expenses incurred removing Receivership Property from the Benaiah office and auction related expenses.

17

Professional fees totaling $79,231 have been paid to Fredrikson & Byron and to CIG and fees totaling $292,684 have been paid to the Receiver. Detailed invoices of the Receiver's fees and expenses have been provided to the parties to this action.

## NOTICE OF OBJECTIONS

Any objection to this report must be filed with the Court and served on the Receiver and all interested parties no later than fourteen (14) calendar days from the date of the filing. The objection must identify with specificity all items of this report to which objection is made, the grounds for the objection, the facts supporting the objection, and any legal authority therefor.

Failure to timely and properly object to this report constitutes a waiver of all objections to thnois report and this report shall be deemed approved for all purposes.

The information and opinions contained in this report are based on the records and other information obtained by the Receiver to date. The Receiver reserves the right to modify the report, including any opinions, as additional records and information are received.

Respectfully Submitted,

Lighthouse Management Group, Inc.
Patrick Finn, CTP, CFE
Partner

# EXHIBIT A

**Benaiah Receivership**
**Schedule of Benaiah Affiliates**

| Entity | Tax ID | Apparent Ownership |
|---|---|---|
| 4Sixteen LLC | unknown | 99.5% Runway Four10 LLC<br>0.5% Ben Wiener |
| Aslan Management, LLC<br>dba Benaiah Custodial Solutions | ███ | 80% Benaiah Holdings<br>20% LEW Hodlings |
| Benaiah Capital, LLC | ███ | 38% Benaiah Holdings<br>22% Dynamic Alpha<br>40% LEW Hodlings |
| Benaiah Digital Fixed Income, LP | ███ | General Partner Benaiah Capital<br>Benaiah Holdings, Inc.<br>Four investors contributed $400,000 |
| Benaiah Digital, LP | ███ | General Partner Benaiah Capital<br>~2.4% Benaiah Holdings, Inc.<br>~2.3% Chris Hmielewski IRA LLC<br>~95.3% 22 investors contributed approximately $4.0M |
| Benaiah Enterprises, LLC | ███ | 52% Ben Wiener<br>48% Bruce Schwan |
| Benaiah Holdings, Inc.<br>fka Benaiah Holdings Company, Inc.<br>dba Benaiah Co. | ███ | 75% Weiner<br>25% Approximately 15 investors contributed $6.4M |
| Benaiah Management Company, Inc | ███ | Ben Wiener |
| Benaiah Runway Inc | ███ | 100% Ben Wiener |
| BL Wiener Family Foundation | ███ | President and Treasurer Ben Wiener |
| BP Defi LLC | ███ | 100% Madison Trust Company, Custodian F/B/O<br>Benjamin Paul Wiener IRA |
| Echo Execution LLC | unknown | 99.5% Runway Four10 LLC<br>0.5% Ben Wiener |
| Four16 Seventeen LLC | ███ | Ben Wiener |
| Guiding Light Enterprises LLC | ███ | Ben Wiener |
| Guiding Light Marketing, LLC | ███ | Ben Wiener |
| Ilhana Wealth, LLC | unknown | Ben Wiener |
| LEW Hodlings, LLC | ███ | 100% Leah Wiener |
| Runway Four10 LLC | ███ | 60% Four16 Seventeen LLC<br>20% Ben Wiener<br>20% LEW Hodlings |
| Springdale Enterprises LLC | ███ | 4.44% Ben Wiener[1] |
| Triple Point Trading LLC | ███ | 99.5% Runway Four10 LLC<br>0.5% Ben Wiener |

[1] Wiener's interest in Springdale Enterprises, LLC was only recently discovered. Springdale Enterprises, LLC is an equity holder in Iterro, Inc. On November 18, 2025, Iterro, Inc. filed an Assignment for the Benefit of Creditors in the District Court of Lyon County, State of Minnesota (Court File Number 42-CV-1197). Lighthouse Management Group is the Assignee in this matter. The Receiver does not believe its appointment as Assignee in the Iterro matter creates a conflict with its appointment as Receiver in this matter, but the Receiver hereby discloses this connection for the purposes of transparency.

EXHIBIT B



Fredrikson & Byron, P.A.
Attorneys and Advisors

60 South Sixth Street, Suite 1500
Minneapolis, MN 55402-4400
Main: 612.492.7000
fredlaw.com

February 16, 2026

VIA E-MAIL

Corey T. Denevan
**DENEVAN FALON LAW FIRM PROF. LLC**
P.O. Box 127
Sioux Falls, SD 57107
corey@denevanfalon.com

Re:     *Timothy A. Kinnetz as trustee of The Timothy A. Kinnetz Revocable Trust v. Benaiah Holdings, Inc., et al.*
         Case No. 4:25-CV-04134-CCT

Dear Mr. Denevan:

As you are aware, we represent Lighthouse Management Group, Inc. (the "Receiver") in its capacity as the Court-appointed receiver in the above-captioned case. As you are further aware, the Receiver was appointed as receiver over (a) Benjamin Wiener, (b) Benaiah Capital, LLC, (c) Benaiah Digital, LP, (d) Benaiah Holdings, Inc., (e) Benaiah Digital Fixed Income, LP, (f) Benaiah Enterprises, LLC, (g) Guiding Light Marketing, LLC, (h) LEW Hodlings, LLC, (i) Benaiah Management Company, Inc., (j) Aslan Management, LLC d/b/a Benaiah Custodial Solutions, (k) Runway Four10, LLC, and (l) Ilana Wealth, LLC (collectively, the "Receivership Entities") in an order dated November 11, 2025 (the "Receivership Order").

As you are further aware, the Receiver filed an Expedited Motion to Compel: (A) Turnover of Receivership Property and Login Credentials; and (B) Cooperation with Receiver that remains pending before the Court. While Mr. Wiener has turned over the firearm and has begun the process of arranging a meeting to access the SD Card and thumb drive held at the IRS office, as of the date of this letter, Mr. Wiener has not actually attended that meeting and has further failed to cooperate with the Receiver regarding access to accounts and the two-factor authentication issue. Consequently, the Receiver intends to proceed with the Expedited Motion and seek relief from the Court and nothing contained in this letter shall constitute a waiver of any argument, claim, or right that the Receiver may have in relation to the Expedited Motion and the relief sought in the motion.

However, the focus of this letter relates to Mr. Wiener's further violations of the Receivership Order after the Receiver filed the Expedited Motion:

- As detailed in the Receiver's affidavits [Docket Nos. 129 and 151], Mr. Wiener has logged into multiple accounts constituting Receivership Property and altered usernames and passwords of those accounts. The Receiver recently learned that Mr. Wiener continues to use the blocktrendlabs@gmail.com XT account, including the following transactions:



February 16, 2026
Page 2

- o $6,980.92 in withdrawals from the XT accounts in November 2025, transferring to an address labeled "glmkrk" (the Receiver understands this is the bpwiener@gmail.com Kraken account) and other wallet IDs saved in the address listing;

- o $5,619.67 in withdrawals from the XT accounts in December 2025, transferring to mainly the same wallet IDs as the November withdrawals;

- o $15,631.07 in deposits in the XT accounts in January 2026, originating from what appears to be a Kraken account;

- o $18,359.57 in withdrawals from the XT accounts in January 2026, transferring to mainly the same wallet IDs as the November withdrawals;

- o $4,336.85 in withdrawals so far in February 2026 involving Ethereum; transferring to mainly the same wallet IDs as the November withdrawals.

All of these accounts, and any assets or information held in such accounts, including, without limitation, the XT accounts, constitute Receivership Property under the Receivership Order and Mr. Wiener's access to, and withdrawal of, assets from those accounts violates the Receivership Order.

- On February 12, 2026, the Receiver learned that a computer issued to Mr. Wiener (Device ID BNC-LT-012) accessed the Beniah.com SharePoint folder at approximately 6:00 p.m. on January 26, 2026. From that time up and until 6:00 a.m. on January 27, 2026, thousands of files were accessed and moved from the SharePoint folder to a OneDrive folder in the name of Ben Wiener. From 6:00 a.m. to 8:00 a.m. on January 27, 2026, thousands of files were deleted from the SharePoint folder. The documents in the SharePoint folder are clearly included in the definition of Receivership Property under the Receivership Order. Mr. Wiener's access and, most significantly, the deletion of those documents is obviously a violation of the Receivership Order.

- A number of the files removed from the SharePoint folder and subsequently deleted are images of trading cards and other sports memorabilia that predate entry of the Receivership Order. Many of those cards and sports memorabilia are not in the possession of the Receiver and the Receiver understands that Mr. Wiener is attempting to sell those cards and sports memorabilia. Under the Receivership Order, the cards and sports memorabilia are Receivership Property and Mr. Wiener's attempts to sell (and any consummated sales of) the cards and memorabilia violate the Receivership Order.

As each of these instances represents a plain and purposeful violation of the Receivership Order, the Receiver hereby demands the following:



February 16, 2026
Page 3

- By no later than 5:00 p.m. on February 18, 2026, Mr. Wiener shall turnover all computers and other electronic devices in his possession, including, but not limited to, Device ID BNC-LT-012.

- Mr. Wiener shall immediately cease all attempts to access any accounts, including the XT account and the other accounts identified in the Receiver's affidavits and shall immediately cease changing the names and passwords of those accounts.

- Mr. Wiener shall immediately cease all attempts to sell trading cards and sports memorabilia. While the Receiver previously agreed that Mr. Wiener could sell trading cards and sports memorabilia purchased by third-parties, due to Mr. Wiener's attempted sales of Receivership Property and attempted deletion of information regarding those cards and memorabilia, the Receiver withdraws its consent to such sales and reserves the right to intervene in any such sales and pursue proceeds of such sales.

If Mr. Wiener fails to turnover the computers and other electronic devices or continues to access accounts and attempt to sell Receivership Property, the Receiver is prepared to seek expedited relief to raise these issues before the Court.

Please contact me to discuss further.

Sincerely,

/s/ Steven R. Kinsella

Steven R. Kinsella
**Direct Dial**: 612.492.7244
**Email**: skinsella@fredlaw.com

# EXHIBIT C

---

## Investigative Report – *Kinnetz v. Benaiah Holdings, Inc.*, et al.

---

**Prepared by:** Cyber Investigations Group, LLC  |  **Date:** February 26, 2026

---

## I.      Introduction

- Lighthouse Management Group (as Receiver) retained Cyber Investigations Group, LLC ("CIG") to assist in tracing cryptocurrency funds associated with Benaiah Capital and its founder, Benjamin Wiener, in connection with an alleged fraudulent cryptocurrency investment management operation.

- CIG's mandate is to identify the pathways of misappropriated funds, determine whether any recoverable funds remain, and identify opportunities for information gathering or recovery via subpoena or recovery action.

- This Report is based on exchange account records, subpoena productions, and other documents provided by Receiver and analytical output produced by CIG during this engagement. Where account access or subpoena returns are pending, destination attribution may be incomplete, and figures may be refined with future records. In particular, MEXC records only encompass the 18 months immediately preceding the date of account data export, so tracing and trading analysis for those accounts is necessarily incomplete.

- Monetary value for cryptocurrency assets is denominated in transaction-date USD value, unless otherwise stated.

## II.     Executive summary

- CIG examined approximately **$14,646,293** in total transfers from known Benaiah/Wiener cryptocurrency exchange accounts (Figure 1).

- CIG determined that at least **$3,194,653** in managed account value was dissipated due to trading activity, based on available account records.

- CIG traced **$3,048,697** to accounts at the Coinbase, OKX, and WEEX cryptocurrency exchanges for which additional information is required to determine the ultimate destinations of those assets. These and other significant sub-flows include:

  i.   **$9,759,988** from Benaiah-associated Kraken accounts to MEXC deposit addresses, three of which are associated with account records available to Receiver:

     a.   **$1,121,789** from the three identified MEXC accounts back to a Kraken deposit address that appears to be associated with Benjamin Wiener's Kraken account. Analysis of this account shows **$2,129,573** in

withdrawals to an account labelled "People's Bank;"

      b. **$239,820** from one of the identified MEXC accounts to three Coinbase deposit addresses that are not associated with deposit addresses provided in Coinbase's subpoena production;

  ii. **$2,263,183** from Benaiah-associated Kraken accounts to a network of WEEX deposit addresses, including **$1,903,378** to a single address;

  iii. **$758,293** from an Aslan Management Bitgo account, identified through subpoena production, to an identified MEXC deposit address;

  iv. **$693,283** from three Receiver-identified Benaiah XT.com accounts into the same Kraken account from sub-flow i(a), occurring in 2024-2025;

  v. **$545,694** from the Kinnetz Kraken account to a Benaiah-associated OKX deposit address;

  vi. **$533,499** from the Benaiah Digital LP contribution address to FTX-associated deposit addresses.

- CIG identified three MEXC deposit addresses as aggregation points based on Receiver-accessible records: **BPDEFI**, **jimmyriches@yahoo.com**, and **ben.wiener@benaiahco.com**. Several MEXC recipient addresses remain unassociated with any identified accounts.

- Receiver has limited access to a Benaiah-associated WEEX account, but current access is insufficient to determine the disposition of received funds.

- CIG analyzed Receiver-provided XT.com account activity. The provided records show substantial, relatively recent transfers to the same group of recurring withdrawal destinations identified in the analysis of MEXC transfer activity.

- CIG reviewed Coinbase subpoena productions. The provided documents show that Wiener and Chris Hmielewski contacted Coinbase about restrictions on their accounts in April 2024 and March 2025. The Coinbase accounts identified in the production, belonging to Wiener and Chris and Andrew Hmielewski, show recent but low-value activity, with most activity occurring from 2022-2024. The above XT.com account appears to have received the bulk of these transfers.

- CIG reviewed Binance US's subpoena productions. The provided documents show that Wiener's Binance US account was funded by a single **$50,000** deposit in April 2021, that the account lost about **$900** in value through trading activity that month, and that Wiener transferred **$49,000** out of the account at the end of the month to Celsius Network, a New Jersey cryptocurrency enterprise that filed for bankruptcy in 2022.

## III.    Findings

### A.    Findings – Kraken outflows and Kraken-to-MEXC transfers

- CIG reviewed Receiver-provided Kraken account documents and performed blockchain tracing and analysis to identify outbound transfers from Benaiah/Wiener-controlled Kraken accounts. CIG identified transfers to MEXC-associated addresses as the largest pathway and therefore prioritized those transfers for follow-up (Table 1). At this stage, CIG limited its analysis only to immediate transaction counterparties, to filter transfers directly to exchanges from those to likely self-custodied addresses.

| Kraken source | Destination (high-level) | USD equiv. |
|---|---|---|
| Kraken - Benaiah Digital | MEXC | $5,486,678 |
| Kraken - ben.wiener@benaiahco | MEXC | $4,393,356 |
| Kraken - Kinnetz | Trading losses | $2,376,073 |
| Kraken - bpwiener@gmail | WEEX | $1,750,157 |
| Kraken - Benaiah Digital (BenaiahDigital) | KuCoin | $408,870 |
| Kraken - ben.wiener@benaiahco | FalconX | $749,885 |
| Kraken - ben.wiener@benaiahco | Trading losses | $560,131 |
| Kraken - ben.wiener@benaiahco | WEEX | $533,739 |
| Kraken – Kinnetz | OKX | $513,869 |
| Kraken - ben.wiener@benaiahco | KuCoin | $437,511 |

Table 1. Largest Kraken outflows in the consolidated flow map (Figure 1).

- Wiener transferred approximately **$9,880,034** from the  accounts reflected  in  Figure 1 to MEXC-associated addresses. Other Kraken outflow destinations in the provided documents include exchanges/services and smaller transfers to additional endpoints.

- **Note**: MEXC is a foreign entity with a questionable history of cooperation in fraud cases. CIG anticipates that judicial intervention may be required to secure cooperation and record production.

### B.    Findings – Downstream transfers from identified MEXC accounts

- CIG identified withdrawal destinations from the three Benaiah-associated MEXC accounts (**BPDEFI**, **jimmyriches@yahoo.com**, and **ben.wiener@benaiahco.com**). The primary  investigative objective at this stage was to identify which recipient services are likely exchanges (and  therefore subpoena-addressable) versus potential self-custody

addresses requiring additional on-chain tracing.

| Withdrawal address (recurring) | Total amount received | Attribution |
| --- | --- | --- |
| TGrKhd5itrPo8YrF2eYXYX2QgQoynyxpD B | $1,121,865.36 | Kraken deposit |
| 0xFdDD98eAA37A7299B6fD31f932AA84d 5b46a4A1c | $160,027 | Coinbase deposit (internal MEXC label "Taunton USD") |
| 0x99ff79169c3a5f7e578310b19295535fe2f3 3de3 | $69,998.52 | Coinbase deposit (internal MEXC label "ASA USDC") |
| TJTUxka3QFKUSvTM4zwV5WjFGApFB Sa13n | $112,119 | PrimeXBT deposit |
| TSohZPiE7C3EQkiLbezD64ZVoVcKBvEo 8E | $49,747.41 | Bitget deposit |
| TLr4XxzUssfGDqHXHsShyFPSLY7F2ztC WM | $48,076.58 | XT.com deposit |
| TTf6XjrnBt65Fa4AUG8NocTbhu41wMeF k4 | $20,190.39 | WEEX deposit |
| 0xe44259685c4e1e5F9983507Bbbb560851 0b4527b | $9,795.01 | Coinbase deposit (internal MEXC label "NED USDT") |
| 0xdD585c37C3eAb0B59E325775DA32188f 0c03FF10 | $7,507.27 | Abraham Perez Coinbase deposit |

Table 2. Recurring withdrawal addresses across the identified MEXC accounts (top totals) with attribution.

- The accounts identified in Coinbase's subpoena production are not associated with any of the above recurring withdrawal addresses, but Receiver-provided documents and MEXC account records indicate their connection with Benaiah-adjacent parties Taunton Ventures LLC, Asa Siegel, and Abraham Perez. The Kraken deposit address is associated with Benjamin Wiener's Kraken account.

## C.  Findings – Recent withdrawal activity and identified destination of funds

- CIG reviewed Receiver-provided records from XT.com. These records show recent activity across four Benaiah-associated accounts, and large withdrawals to identified exchange deposit addresses as recently as July 2025 and otherwise occurring in large part during 2024. Those flows are illustrated in Figure 2.

- CIG also reviewed subpoena productions from Coinbase. These records reflect deposit, withdrawal, and trading history for four Benaiah-associated accounts: **andrewhmielewski21@gmail.com**, **ben.wiener@benaiahco.com**, **benaiahdigital@benaiahco.com**, and **chris.hmielewski@benaiahco.com**.

- These records show activity associated with all four email addresses since at least

March 2021; a peak in activity in late 2024; and approximately **$56,000** worth of transfers out of these accounts occurring between January 2025 and October 2025. Whether the destination accounts are worth follow-up remains to be seen; the top receiving counterparties are foreign and their cooperation with subpoenas is not guaranteed.

| Coinbase account | Counterparty | Total send (USD) |
|---|---|---|
| chris.hmielewski@benaiahco.com | XT.com 0x1451 | $91,965.17 |
| ben.wiener@benaiahco.com | MEXC 0xdce3 | $91,352.85 |
| chris.hmielewski@benaiahco.com | Kucoin 0xccaa | $50,353.88 |
| ben.wiener@benaiahco.com | MEXC 0x9784 | $42,947.30 |
| ben.wiener@benaiahco.com | Bybit 0xd919 | $23,247.82 |
| chris.hmielewski@benaiahco.com | XT.com 0x13d5 | $19,445.40 |

Table 3. Counterparties in recent outbound transfers from identified Coinbase accounts. All transfers occurred in 2024-2025, with the exception of Kucoin (2021).

## D.    Findings – Trading activity and net P&L effects

- CIG reviewed account-level trading activity from available records and performed analyses for the Benaiah accounts and the investor-specific Kinnetz  Kraken account. The table below reflects the net balance change attributable to trading activity within those accounts, as determined by the account records available. MEXC accounts have been excluded from analysis until a more holistic dataset can be obtained.

| Account source | Net trading P&L (USD) |
|---|---|
| Kraken – Kinnetz | -$2,376,073 |
| Kraken – ben.wiener@benaiahco | -$560,131 |
| Kraken – Benaiah Digital | -$26,679 |
| Kraken – bpwiener@gmail | -$10 |
| Coinbase – ben.wiener@benaiahco | -$223,283 |
| Coinbase – andrewhmielewski21@gmail | -$5,367 |
| Coinbase – chris.hmielewski@benaiahco | -$2,250 |
| Binance US – ben.wiener@benaiahco | -$860 |
| **TOTAL** | **-$3,194,653** |

Table 4. Net trading loss/gain for exchange accounts based on provided records.

## E.    Blockchain tracing through intermediate addresses

- Where analysis of exchange account records indicated transfers to likely self-custodied addresses, CIG performed blockchain tracing and analysis to determine those funds' destinations. The tracing graphs prepared by CIG include exchange-attributed endpoints and intermediary addresses that assist in identifying subpoena targets and prioritizing follow-up. Unless otherwise noted, CIG conducted tracing using the last-in, first-out ("LIFO") methodology and generally prioritized transfers of $5,000-$10,000 USD or more per counterparty. Tracing graphs are attached as Figures.

### 1.    The Kinnetz account

- The tracing in Figure 3 reflects Wiener's transfers from a Kraken account established for investor Tim Kinnetz (but controlled by Wiener) to multiple exchange-attributed addresses including OKX, KuCoin, Bybit, and Gate.io. Mr. Kinnetz funded this account with a **$3 million** initial transfer, and Wiener appears to have dissipated nearly **$2.4 million** of that value through trading activity alone (Table 4).

- Wiener transferred **$514,000** from the Kinnetz account to two OKX deposit addresses. These transfers occurred directly between the Kinnetz account and the OKX addresses and are therefore not included in Figure 3 as no tracing was required. A further **$65,496** in transfers required tracing as depicted in Figure 3, of which **$31,828** was transferred to an OKX deposit address.

- It is unclear whether the OKX account records currently accessible by the Receiver correspond to either of these two addresses. A subpoena to OKX is pending.

### 2.    The Benaiah Digital LP receiving address

- The Benaiah Digital LP tracing graph (Figure 4) reflects on-chain transfers from an address provided in the Benaiah Digital LP contract, for investors to make direct in-kind contributions. The graph depicts Wiener's transfers to exchange-attributed endpoints and other points of interest. These may represent additional subpoena or recovery targets and, in the case of FTX, the opportunity to submit claims in the bankruptcy proceedings.

- CIG also identified two self-custodied addresses with recent activity and high counterparty exposure to FalconX. The Receiver issued subpoenas to FalconX to determine whether transfers from FalconX to these addresses, or from these addresses to FalconX, involve any as-yet-unidentified Benaiah accounts at FalconX that might contain assets for recovery. These addresses are highlighted in red in Figure 4.

- **Note:** Wiener transferred approximately **$750,000** in assets from Benaiah-affiliated Kraken accounts to a FalconX deposit addresses. CIG excluded those transfers from this Report per Receiver's assertion that those transfers comprise a loan repayment to an identified counterparty. The self-custodied addresses identified above present the opportunity to determine whether additional FalconX accounts exist and, if so, whether any assets are present for recovery. A subpoena to FalconX is pending.

### 3.    Jimmyriches@yahoo.com MEXC transfers

- CIG's review of transfers from identified MEXC accounts revealed outgoing transfers of over **$100,000** from the **jimmyriches@yahoo.com** account to several intermediate, non-exchange-affiliated addresses.

- Further tracing revealed that these intermediate addresses were the sole hop between the **jimmyriches** MEXC account and a PrimeXBT deposit address, as depicted in Figure 5. PrimeXBT is an institutional brokerage headquartered in Seychelles and not accessible by U.S. users.

## IV.    Next steps

- **MEXC subpoenas / follow-up.** Attempt to obtain complete records for accounts connected to all identified deposit addresses at MEXC. MEXC contends that only the last 18 months' worth of transaction data is available, so full tracing of incoming deposits is currently not feasible unless they can produce the full historical account data for each deposit address. MEXC's foreign status means this may be difficult.

- **WEEX follow-up.** Wiener transferred over **$2.3 million** from Benaiah-associated Kraken accounts to WEEX-associated deposit addresses. Receiver has limited access to one WEEX account that is currently frozen. Access is insufficient to determine association with recurring withdrawal addresses, disposition of received funds, or the reason for the freeze. WEEX's foreign status means follow-up may be difficult.

- **Coinbase follow-up.** Wiener transferred approximately **$239,820** from identified MEXC accounts to three Coinbase addresses that are not definitively linked to any Receiver-accessible Coinbase accounts. Internal account labelling associates them with **Taunton Ventures**, an early investor and awardee of a $9.5 million judgment against Benaiah Capital, and **Asa Siegel**, Ilana Wealth's chief investment officer. Follow-up should attempt to determine whether these parties received the funds or whether they remain in Wiener's control at as-yet-unidentified Coinbase accounts. Taunton in particular contributed $7.5 million to Benaiah Capital, but this deposit address appears to have been used solely to receive transfers from MEXC accounts.

- **OKX follow-up**. Subpoenas are pending to OKX regarding the accounts that received approximately $546,000 from Mr. Kinnetz's Kraken account.

- **Party discovery.** Interrogatories and requests for production to Wiener targeting the missing cryptocurrency exchange account documentation, including attention to alternate sources for data beyond exchange-generated account documents (emails, text messages, etc.).

Prepared by:

_____

**Evan Cole**, Head of Investigations

Reviewed by:

_____

**Marshal Hoda**, Attorney and Founder



**Figure 1. High-level map of traced funds from identified accounts to downstream recipients.**



**Figure 2. Flow of funds from XT.com accounts to downstream recipients.**



**Figure 3. Kinnetz Kraken account blockchain tracing graph.**



**Figure 4. Benaiah Digital LP in-kind contribution address blockchain tracing graph.**



**Figure 5. Jimmyriches@yahoo MEXC withdrawals blockchain tracing graph.**